COMMONWEALTH vs. DANEROY GORDON.

No. 11-P-435.

Suffolk. June 1, 2012. - September 6, 2012.

Present: CYPHER, KAFKER, & GRAHAM, JJ.

*Alien. Assault and Battery on Certain Public Officers and Employees. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Plea, Sentence.

A Boston Municipal Court judge erred in allowing, without an evidentiary hearing, the motion for a new trial of a criminal defendant who was not a United States citizen, where, given that the defendant raised a serious legal issue, i.e., that the advice and sentencing recommendation of his plea counsel (which rendered the defendant's deportation inevitable) constituted ineffective assistance, and made a substantial enough evidentiary showing to justify an evidentiary hearing, such a hearing was required to address ambiguities and gaps in the affidavits on the issue of prejudice. [393-402]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on September 2, 2008.

A motion to vacate conviction or to reconsider prior sentencing order, filed on May 21, 2010, was heard by *Tracy-Lee Lyons*, J., and motions to reconsider, filed on July 16, 2010, and December 10, 2012, were also heard by her.

*Amanda Teo*, Assistant District Attorney, for the Commonwealth.

*Derege B. Demissie* for the defendant.

KAFKER, J. In 2008, the defendant, Daneroy Gordon, pleaded guilty to charges including firearms offenses and assault and battery on a police officer (ABPO). His sentences included eighteen months committed in the house of correction for illegally possessing a firearm and, as relevant here, a concurrent sentence of one year for ABPO. As the defendant is not a United States citizen, the firearms convictions made it possible he would

be deported. However, the conviction of ABPO, given the one-year sentence he received, made his deportation certain.

After deportation proceedings were commenced against him, the defendant moved for a new trial under *Padilla* v. *Kentucky*, 130 S. Ct. 1473 (2010) (*Padilla*), asserting that his plea counsel was ineffective for advising him that the immigration authorities would only consider the firearms charges and not the ABPO charge. A judge of the Boston Municipal Court ultimately granted the motion and vacated the defendant's guilty plea on the ABPO charge.[1] The Commonwealth appealed, arguing that the defendant did not meet his burden on either element of his ineffective assistance of counsel claim, and that the motion judge was required to hold an evidentiary hearing. Because we agree that an evidentiary hearing is necessary to decide the defendant's claim, we vacate and remand for further proceedings.

1. *Procedural history.* On December 15, 2008, the defendant pleaded guilty to all five counts in the complaint against him: carrying a firearm without a license, in violation of G. L. c. 269, § 10(*a*) (Count 1); unlawful possession of ammunition, in violation of G. L. c. 269, § 10(*h*) (Count 2); carrying a loaded firearm without a license, in violation of G. L. c. 269, § 10(*n*) (Count 3); assault and battery on a police officer, in violation of G. L. c. 265, § 13D (Count 4); and resisting arrest, in violation of G. L. c. 268, § 32B (Count 5). After hearing sentencing recommendations from the prosecution and defense counsel, the plea judge (who has since retired) imposed the following sentences: on Count 1, two and one-half years in the house of correction, eighteen months to serve, the balance suspended for three years; on Count 2, eighteen months in the house of correction concurrent with Count One; on each of Counts 4 and 5, one year in the house of correction concurrent with Count One; and on Count 3, three years of probation from and after the sentence on Count 1. These sentences were largely consistent with the defendant's recommendations, and in particular, the plea judge ac-

---

[1]The parties indicate in their briefs that the motion judge ordered all five of the defendant's guilty pleas vacated. We are not certain, from the text of the decision, whether this is in fact what the judge ordered. The decision refers consistently to the defendant's "conviction" or "plea" in the singular. In light of our disposition, this issue is not currently material, but on remand it should be clarified which, if any, of the defendant's other pleas were to be vacated.

cepted the defendant's sentencing recommendations on Counts 4 (ABPO) and 5 (resisting arrest).

As part of the plea colloquy, the judge gave, in substance, the immigration warnings required by G. L. c. 278, § 29D, telling the defendant that "a disposition of this nature could affect your status with the department of immigration and naturalization to the extent that it could result in . . . deportation." The tender of plea form, which was signed by the defendant, plea counsel, and the judge, indicated that the defendant understood that his plea "may have the consequence[] of deportation" and that plea counsel had explained the defendant's rights to him.[2]

On January 2, 2009, an officer of the United States Department of Homeland Security issued a notice to appear, commencing "removal," i.e., deportation, proceedings against the defendant.[3] The notice indicated that the defendant was subject to deportation because of his conviction of ABPO. The notice made no mention of the other charges of which the defendant was convicted.[4]

On May 16, 2010, the defendant, represented by new counsel, filed a "Motion to Vacate Conviction and/or Reconsider Prior Sentencing Order," seeking that the court either vacate the defendant's "conviction" or retroactively reduce his sentences on the ABPO and resisting arrest charges from one year to eleven months. Among other things, he argued that his plea counsel had been ineffective under *Padilla.*

The defendant's affidavit stated, in part: "I accepted the plea in this case because my lawyer told me that I did not have any other options available to me. When I asked about my immigra-

---

[2]Although relevant to the inquiry, neither the judge's warning nor the tender of plea form is dispositive of the defendant's ineffective assistance claim. See *Padilla, supra* at 1486-1487 & n.15 (holding that defendant's counsel was constitutionally deficient despite deportation warning on tender of plea form); *Commonwealth* v. *Clarke,* 460 Mass. 30, 48 n.20 (2011) (such warnings are no substitute for effective advice of counsel, but may bear on prejudice); *Commonwealth* v. *Martinez,* 81 Mass. App. Ct. 595, 597 n.3 (2012) (immigration warning by judge "does not affect our analysis").

[3]The record reflects that the defendant was served with papers relating to deportation on February 19, 2010. It is unclear whether he had notice of the proceedings prior to that date.

[4]As discussed below, however, each of the five charges to which the defendant pleaded guilty could have led to his deportation.

tion status he told me that 'they would look at the gun charge, but they would not look at the Assault and Battery charge.' " He further stated: "My lawyer never told me that a reduction in my sentence of one day would make a difference in my deportation case. Had my lawyer informed me of that, I would have elected a trial and tried to obtain that reduction." His affidavit also revealed the following background information: the defendant, a citizen of Jamaica, has been a lawful permanent resident of the United States since 1993, graduated from high school in Massachusetts, and has maintained steady employment in this country. The defendant's mother, girlfriend, and two children are all United States citizens.

The defendant also included an affidavit from motion counsel stating that a one-year sentence for ABPO meant that the defendant's deportation was mandatory, whereas he could apply for "cancellation of removal" if his sentence were less than one year. Counsel also averred that the "one year rule" was "firmly established" and that she had taught defense lawyers about it at continuing legal education programs and annual trainings for the Committee for Public Counsel Services. There was initially no affidavit from plea counsel.

The motion judge held a nonevidentiary hearing at which she stated that an affidavit from plea counsel "would be very helpful to the court." The same day, the defendant filed an affidavit from plea counsel stating, in its entirety, the following:

"1. I represented [the defendant] in the above matter.

"2. I remember the case well because we litigated a motion to suppress in front of Judge Kelly that was denied.

"3. I was aware of [the defendant's] immigration status and discussed it with him prior to his acceptance of the plea.

"4. [Motion counsel] has informed me that I had requested a one year suspended sentence on a charge of Assault and Battery on a Police Officer.

"5. Based on my review of this case, I believe I likely mistakenly advised [the defendant] that his concern was

the charges involving the firearm offenses, and that he did not need to worry about the Assault and Battery on a Police Officer charge."

The motion judge allowed the defendant's motion to reconsider his sentence without further hearing. At another nonevidentiary hearing a few weeks later, she denied the Commonwealth's oral motion to reconsider and revised the defendant's sentences for ABPO and resisting arrest to eleven months, nunc pro tunc.

The Commonwealth filed a timely motion for reconsideration, arguing that the defendant should have sought the revision of his sentence through a motion to revise and revoke pursuant to Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979), which would have been timely only within sixty days of sentencing. See *Commonwealth* v. *Fanelli*, 412 Mass. 497, 504 n.4 (1992); *Commonwealth* v. *DeJesus*, 440 Mass. 147, 151 (2003). The Commonwealth also moved for written findings and rulings.

The motion judge issued a written decision in which she credited the affidavits of the defendant and plea counsel, noting with respect to the latter that "[h]e is an attorney who practices regularly in this court and [he] stated he 'mistakenly advised [the defendant] that he did not have to worry about the Assault and Battery on a police officer.' " She found that "[t]here is a reasonable probability that but for the error of counsel there would have been a significant, different and more favorable result" with regard to the disposition of the case and the effect on his immigration status. She quoted a passage from Justice Alito's concurrence in *Padilla* regarding the significance of "affirmative misadvice" by counsel in distorting the decision to plead guilty[5] and concluded: "The Court allows the Commonwealth's motion to reconsider . . . . However, the defendant's motion to vacate his plea is allowed, and the case is to be placed on the trial list." The motion judge denied the Commonwealth's further motion for reconsideration, and the Commonwealth appealed.

*2. Necessity for evidentiary hearing.* A postsentence motion to withdraw a guilty plea is considered a motion for a new trial under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501

---

[5]See *Padilla*, 130 S. Ct. at 1492-1493 (Alito, J., concurring).

(2001), and is governed by the usual standards for such motions. See *Commonwealth* v. *Furr*, 454 Mass. 101, 106 (2009), and cases cited. A strong policy of finality limits the grant of new trial motions to exceptional situations, and such motions should not be allowed lightly. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 662-663 (1998), and cases cited. However, it is within a judge's discretion, applying a "rigorous standard," to grant such a motion at any time "if it appears that justice may not have been done." *Commonwealth* v. *Williams*, 71 Mass. App. Ct. 348, 353 (2008), quoting from *Commonwealth* v. *Berrios*, 447 Mass. 701, 708 (2006), cert. denied, 550 U.S. 907 (2007). Justice is not done if the defendant has received ineffective assistance of counsel in deciding to plead guilty. See *Commonwealth* v. *Hiskin*, 68 Mass. App. Ct. 633, 637-638 (2007).

The motion judge took the unusual step of granting what was effectively a motion for a new trial without holding an evidentiary hearing. This aspect of her ruling is governed by Mass.R. Crim.P. 30(c)(3), as appearing in 435 Mass. 1502 (2001), which states: "Moving parties shall file and serve and parties opposing a motion may file and serve affidavits where appropriate in support of their respective positions. The judge may rule on the issue or issues presented by such motion on the basis of the facts alleged in the affidavits without further hearing *if no substantial issue is raised* by the motion or affidavits" (emphasis supplied).

It is well established that a judge has discretion to deny a new trial motion on the affidavits. See, e.g., *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). Cf. *Commonwealth* v. *Clarke*, 460 Mass. 30, 49 (2011) (*Clarke*) (declining to remand for further proceedings where the defendant's affidavits "ha[ve] come nowhere near meeting the burden he bears on the issue of prejudice"). Indeed, the rule encourages the denial of a motion for a new trial on the papers, without hearing, where no substantial issue is raised. See *Commonwealth* v. *Stewart*, *supra* at 260; Reporters' Notes to Rule 30(c)(3), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1641 (LexisNexis 2011-2012).

A judge's power to *grant* such a motion on the papers is more circumscribed. See *Commonwealth* v. *Saarela*, 15 Mass. App. Ct. 403, 406-407 (1983). Generally, "where a substantial

issue is raised and is supported by a substantial evidentiary showing, the judge should hold an evidentiary hearing." *Commonwealth* v. *Stewart, supra* at 260. See also Reporters' Notes to Rule 30(c)(3), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, *supra* ("Where a substantial issue is raised, however, the better practice is to conduct an evidentiary hearing"). For instance, courts have remanded for an evidentiary hearing where the defendant and the Commonwealth presented conflicting affidavits, *Commonwealth* v. *Saarela, supra,* and where the affidavits were missing key elements, see *Commonwealth* v. *Companonio,* 420 Mass. 1003, 1003 (1995), *S.C.,* 445 Mass. 39 (2005). Holding an evidentiary hearing provides the Commonwealth the opportunity to challenge the evidence presented in the affidavits. Cf. *Commonwealth* v. *Nolan,* 19 Mass. App. Ct. 491, 492 (1985) ("the defendant may offer extraneous evidence to supplement [or contradict] the record, but in that event the Commonwealth has a like right to offer evidence"). Such a hearing also enables the judge to make the findings of fact required to decide the motion. See Mass.R.Crim.P. 30(b) (judge "shall make such findings of fact as are necessary to resolve the defendant's allegations of error of law"). An evidentiary hearing may not be necessary, however, if the substantial issue raised is solely a question of law, or if the facts are undisputed in the record. Cf. *Commonwealth* v. *Gagliardi,* 418 Mass. 562, 572 (1994), cert. denied, 513 U.S. 1091 (1995) (evidentiary hearing would not be useful where sole issue in new trial motion was matter of law); *Commonwealth* v. *Sherman,* 68 Mass. App. Ct. 797, 799-800 (2007), *S.C.,* 451 Mass. 332 (2008) (motion relying solely on contemporaneous plea colloquy need not include affidavits).

We conclude that the defendant has raised a serious legal issue, and he has made a substantial enough evidentiary showing to justify an evidentiary hearing. His showing is not, however, sufficient for allowance of the motion for a new trial based on the affidavits alone, as the affidavits leave too many factual questions unanswered. See Reporters' Notes to Rule 30(c)(3), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1641 ("In determining whether the motion raises a substantial issue which merits an evidentiary hearing, the judge should

look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing").

3. *Ineffectiveness of counsel.* The defendant's claim is based on ineffective assistance of counsel. The question of ineffective assistance is governed by the familiar standard of *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974): whether there was "serious incompetency, inefficiency, or inattention of counsel . . . [that] has likely deprived the defendant of an otherwise available, substantial ground of defence." See *Commonwealth* v. *Mahar,* 442 Mass. 11, 15 (2004). "The burden lies with the defendant, see *Commonwealth* v. *Healy,* 438 Mass. 672, 677 (2003), and with respect to the second prong of the *Saferian* test, the defendant must show that 'better work might have accomplished something material for the defense.' *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977)." *Commonwealth* v. *Phinney,* 446 Mass. 155, 162 (2006), *S.C.,* 448 Mass. 621 (2007).

"In *Padilla,* the United States Supreme Court held that defense counsel's failure to advise a client that a consequence of his guilty plea likely would be deportation constituted ineffective assistance of counsel." *Clarke,* 460 Mass. at 31, citing *Padilla,* 130 S. Ct. at 1483.[6] Specifically, Padilla's counsel wrongly told him before he pleaded guilty that he "did not have to worry about immigration status since he had been in the country so long," whereas the drug charges to which he pleaded guilty actually "made his deportation virtually mandatory." *Padilla, supra* at 1478, quoting from *Commonwealth* v. *Padilla,* 253 S.W.3d 482, 483 (Ky. 2008). The Supreme Court held that the Sixth Amendment to the United States Constitution requires effective counsel to advise a defendant on the risk of deportation so that the defendant may make a fully informed and voluntary decision whether to plead guilty. See *id.* at 1481-1483. The Court declined to draw a bright line between affirmative misadvice and a mere failure to advise of possible consequences. See *id.* at 1484-1486. Instead, it held that "when the deportation consequence [of a guilty plea] is truly clear," competent counsel must give correct advice concerning the risk of deportation. *Id.* at 1483. On the other hand, due to the complex-

---

[6]The holding of *Padilla* applies retroactively to the defendant's case. See *Clarke, supra* at 45.

ity of immigration law, "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Ibid.* Because Padilla's risk of deportation was clear and his counsel misinformed him that he was not at risk, the Court found his counsel deficient. See *id.* at 1483-1484.

Unlike in *Padilla,* counsel in the instant case did not fail completely to advise the defendant of the risk of deportation. Indeed, counsel advised the defendant of a risk of deportation based on the firearms convictions. If counsel was ineffective, it was because of his advice and sentencing recommendations regarding the ABPO conviction, which rendered the defendant's deportation inevitable. The Commonwealth contends that the advice here satisfied *Padilla* standards because the immigration issues were not succinct and straightforward and counsel generally advised the defendant that pleading guilty placed him at a risk of deportation.

a. *The immigration issue related to the one-year sentence for ABPO was clear and consequential.* Determining the consequences of the plea and sentence involves several Federal statutory provisions. Under 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), any noncitizen convicted of an "aggravated felony" is deportable, and "shall, upon the order of the Attorney General, be removed," or deported.[7] 8 U.S.C. § 1227(a). An aggravated felony, according to 8 U.S.C. § 1101(a)(43)(F) (2006), includes a crime of violence[8] for which one is sentenced to at least one year of imprisonment. The United States Attorney General gener-

---

[7]A noncitizen convicted of firearms offenses such as those to which the defendant pleaded guilty is also deportable. See 8 U.S.C. § 1227(a)(2)(C). However, firearms offenses do not necessarily make a noncitizen ineligible for cancellation of removal.

[8]A "crime of violence" for these purposes is defined as:

"(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

"(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

18 U.S.C. § 16 (2006). For purposes of subsection (b), "[a]n offense is clas-

ally has the discretion to "cancel removal," allowing a noncitizen who is currently a permanent resident to remain in the country, but individuals convicted of an aggravated felony are ineligible for cancellation of removal.[9] 8 U.S.C. § 1229b(a)(3) (2006). As the Supreme Court summarized, "if a noncitizen has committed a removable offense after [1996], his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal." *Padilla*, 130 S.Ct. at 1480. We have held that the opportunity to petition for cancellation of removal is a "serious benefit." *Commonwealth* v. *Martinez*, 81 Mass. App. Ct. 595, 596 n.2 (2012).[10]

Conviction of ABPO under G. L. c. 265, § 13D, requires proof of either "the intentional and unjustified use of force" or "the intentional commission of a wanton or reckless act . . . causing physical or bodily injury to another." *Commonwealth* v. *Correia*, 50 Mass. App. Ct. 455, 456 (2000), quoting from *Commonwealth* v. *Burno*, 396 Mass. 622, 625 (1986). Because the offense requires either the use of force or bodily injury, it is a crime of violence under Federal law. *Blake* v. *Gonzales*, 481 F.3d 152, 159-162 (2d Cir. 2007). Cf. *United States* v. *Santos*, 363 F.3d 19, 23-24 (1st Cir. 2004), cert. denied, 544 U.S. 923

sified by [F]ederal law as a felony if 'the maximum term of imprisonment authorized' is more than one year." *Blake* v. *Gonzales*, 481 F.3d 152, 160 (2d Cir. 2007) (Sotomayor, J.), quoting from 18 U.S.C. § 3559(a).

[9]Although decisions on cancellation of removal are fact specific, the immigration authorities have described a number of factors guiding the exercise of their discretion. See *Matter of Marin*, 16 I. & N. Dec. 581, 584-585 (B.I.A. 1978); *Matter of C-V-T-*, 22 I. & N. Dec. 7, 11-12 (B.I.A. 1998); *Matter of Sotelo*, 23 I. & N. Dec. 201, 203-204 (B.I.A. 2001).

[10]The Department of Justice typically grants approximately 3,000 to 4,000 requests for cancellation of removal by lawful permanent residents each year, but does not regularly release statistics on how frequently such relief is requested. See U.S. Department of Justice, Executive Office for Immigration Review, Fiscal Year 2011 Statistical Year Book, available at http://www. justice.gov/eoir/statspub/fy11syb.pdf, at R3 (last viewed Sept. 4, 2012). However, it did disclose that in Fiscal Year 2005, 2,534 out of 4,643 applications for cancellation of removal under this provision were successful, a rate of 54.5 percent. See U.S. Department of Justice, Executive Office for Immigration Review, AILA-EOIR Agenda Questions and Answers, Oct. 18, 2006, available at http://www.justice.gov/eoir/statspub/eoiraila101806.pdf, at 15 (last viewed Sept. 4, 2012). We cannot discern from these statistics how many of the removals that were cancelled involved firearms offenses.

(2005) (G. L. c. 265, § 13D, is a crime of violence for Federal sentencing purposes).[11] ABPO is therefore an aggravated felony if the sentence imposed is at least one year in prison.

The consequences of the defendant's guilty plea to ABPO were not as obvious as in *Padilla* and *Clarke*. In those cases, a single provision of the United States Federal Code stated that any drug conviction, except one of simple possession of a small amount of marijuana, subjected a noncitizen to deportation. See *Padilla*, 130 S. Ct. at 1483; *Clarke*, 460 Mass. at 46, quoting from 8 U.S.C. § 1227(a)(2)(B)(i). Here several provisions of the Federal Code must be read in concert. However, the issue is not so complex or confused that a reasonably competent attorney would be uncertain of the consequences of the plea. Contrast *Padilla, supra* at 1488-1490 (Alito, J., concurring) (listing numerous examples of unclear issues of immigration law). The issue is also highly significant, as it renders removal certain. See Buso, Church, Kanstroom, Keehn, Levy, Padellaro, & Weinberger, Collateral Consequences of Criminal Convictions, at 19 (Mass. Cont. Legal Educ. 2001) ("The practitioner representing a noncitizen should attempt to avoid a conviction for an aggravated felony if at all possible, because the consequences are devastating"); McWhirter, ABA, The Criminal Lawyer's Guide to Immigration Law: Questions and Answers § 5.1, at 146 (2d ed. 2006) ("Title 8 U.S.C. § 1101[a][43] lists aggravated felonies. Whenever an alien is charged with a crime, *look at this statute!*" [emphasis in original]). As the defendant's motion counsel stated in her affidavit, in 2008 it was "firmly established" that a defendant sentenced to less than one year would not receive the label of "aggravated felon." See Winslow, Crime and Consequence: The Collateral Effects of Criminal Conduct § 8.6.2, at 204 (Mass. Cont. Legal Educ. 2001) ("Crimes of violence . . . are considered aggravated felonies if the prison sentence is at least one year. A sentence of less than

---

[11] Although both parties have primarily focused on the ABPO conviction, the same reasoning and analysis applies to the conviction of resisting arrest. See *Estrada-Rodriguez* v. *Mukasey*, 512 F.3d 517, 520-521 (9th Cir. 2007) (Arizona resisting arrest statute, nearly identical to G. L. c. 268, § 32B, is crime of violence). Cf. *United States* v. *Almenas*, 553 F.3d 27, 32-35 (1st Cir.), cert. denied, 556 U.S. 1251 (2009) (G. L. c. 268, § 32B, is crime of violence under Federal sentencing guidelines).

one year will not make the charge an aggravated felony");[12] McWhirter, *supra* at § 5.27, at 158 ("[I]f counsel representing the alien can get a sentence of 364 days or less, [crimes of violence] are not aggravated felonies"). We therefore conclude that the issue was clear and consequential enough that effective counsel should have advised the defendant appropriately on this issue before he pleaded guilty. The issue is particularly problematic because defense counsel apparently recommended the one-year sentence on the ABPO charge.

b. *Prejudice.* "To succeed on an ineffective assistance of counsel claim, the consequence of counsel's serious incompetency must be prejudicial." *Clarke, supra* at 46-47. Of particular relevance here, the court in *Clarke* stated that a defendant may show prejudice by demonstrating "a reasonable probability that a different plea bargain (absent [the dire immigration] consequences) could have been negotiated at the time." *Id.* at 47.[13] Cf. *Padilla, supra* at 1486 (competent counsel "may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation"). Clarke pleaded guilty to possession of cocaine and marijuana with intent to distribute, in exchange for which the Commonwealth agreed to the dismissal of school zone violations, which carried mandatory minimum penalties. *Clarke, supra* at 32, 48. Only if he had been allowed to plead down further to the lesser included offenses of simple possession could Clarke have avoided aggravated felonies. See *id.* at 47 n.18. There was no showing in *Clarke* that this theoretical plea bargain was in any way plausible. *Ibid.*

This case is distinguishable from *Clarke.* To avoid the consequence of which the defendant complains — ineligibility for cancellation of removal — it would not have been necessary for

---

[12]The second edition of this book, published after the plea in this case, reaffirms that "[a] lesser sentence, even by one day, will avoid an aggravated felony." Meade & Winslow, Crime and Consequence: The Collateral Effects of Criminal Conduct § 8.7.2, at 8-26 (Mass. Cont. Legal Educ. 2009).

[13]A defendant may also satisfy the prejudice requirement by identifying an "available, substantial ground of defence" he could have pursued at trial, *Commonwealth* v. *Saferian,* 366 Mass. at 96, or by demonstrating that he "placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty." *Clarke, supra* at 47-48. See *Commonwealth* v. *Martinez,* 81 Mass. App. Ct. at 600.

him to plead guilty to different or lesser charges, or even to serve less time. Rather, what was necessary was to convince the judge to sentence him to at least one day less on the ABPO charge. Because the ABPO sentence was concurrent with the sentences on the firearms charges, the end result of the sentencing could have been essentially the same, while leaving the defendant eligible to petition the Attorney General for relief from deportation. The defendant averred that, had he been aware one day would have made a difference, he would have rejected the plea bargain and sought a trial or a reduction. Unlike in *Clarke*, we conclude that a plea bargain for a sentence of less than one year on the ABPO, with different deportation consequences as a matter of law, may have been a reasonable probability given the over-all sentence he received, and so it may have been rational for him to reject the one-year sentence on the ABPO. Compare *Clarke*, 460 Mass. at 47-49 & n.18. The defendant has therefore raised a substantial issue as to prejudice. See *Commonwealth v. Martinez*, 81 Mass. App. Ct. at 600. On remand, he bears the burden of establishing prejudice. See *Clarke*, *supra* at 46-47; *Commonwealth v. Martinez*, *supra* at 599-600.

c. *Ambiguities and gaps in the affidavits.* Although the defendant has raised substantial issues, an evidentiary hearing is required to address ambiguities and gaps in the affidavits. See *Commonwealth v. Companonio*, 420 Mass. at 1003. Plea counsel's affidavit only states that he *believes* that he *likely* gave the defendant mistaken advice regarding the effect of the ABPO on deportation. We cannot judge from the affidavit how firm that belief was or how likely he thought it was that he gave mistaken advice. We also cannot determine what plea counsel said about the risk of deportation in regard to the firearm offenses.[14] Was the defendant informed, for example, that the risk was great in regard to the firearm offenses? Additionally, it is not clear what the defendant's response to counsel's advice was at the time, or whether he was particularly concerned about deportation. See *Commonwealth v. Martinez*, *supra* at 600. The affidavits do not explain why counsel proposed a one-year sentence or whether the Commonwealth would have opposed a one-day reduction.

---

[14]The likelihood of cancellation of removal for these offenses, particularly the firearm offenses, may be relevant to the prejudice inquiry. The record does not provide us with this information.

The record contains insufficient information about the facts of the ABPO and whether the defendant had any viable defense at trial on this charge. See *Clarke, supra* at 47, citing *Commonwealth v. Saferian*, 366 Mass. at 96. We therefore conclude, as stated above, that it was error to allow the motion for a new trial without an evidentiary hearing. Cf. *Commonwealth* v. *Saarela*, 15 Mass. App. Ct. at 406-407.

4. *Conclusion.* The defendant's motion raised a serious issue as to the ineffectiveness of his plea counsel and was supported by substantial evidence. The motion, however, should not have been allowed without an evidentiary hearing. Such a hearing is necessary to determine whether his guilty plea should be vacated and a new trial ordered. The order dated February 9, 2011, denying the Commonwealth's motion for reconsideration is reversed. The order allowing the defendant's motion for new trial, dated November 18, 2010, is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*