APPEALS COURT 
 
 COMMONWEALTH vs. CHARLES CRUMP, JR.

 
 Docket:
 23-P-1425
 
 
 Dates:
 November 8, 2024 – March 6, 2025
 
 
 Present:
 Henry, Sacks, & Singh, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Motor Vehicle, Operating under the influence. Intoxication. Evidence, Breathalyzer test, Intoxication, Exculpatory. Practice, Criminal, Plea, New trial, Conduct of government agents, Affidavit.
 
 

       Complaint received and sworn to in the
Chicopee Division of the District Court Department on April 9, 2013. 
      A motion to withdraw a plea of guilty,
filed on October 25, 2022, was heard by Charles W. Groce, III, J. 
      Elizabeth Simonian (Travis H. Lynch,
Assistant District Attorney, with her) for the Commonwealth.
      Erica M. Bruno for the defendant.
      HENRY, J. 
In this case we examine important factors the Supreme Judicial Court and
this court have considered in appeals from orders granting or denying a
defendant's motion for new trial based on egregious government misconduct
involving the calibration of Alcotest 9510 breathalyzer devices.  After a nonevidentiary hearing and without
making findings of fact, the motion judge, who also was the plea judge, allowed
the defendant's motion to withdraw his plea entered on the charge of operating
a motor vehicle under the influence of intoxicating liquor (OUI), third
offense, as well as other offenses arising out of the same incident.  The Commonwealth appeals, arguing that the
judge abused his discretion by allowing the motion without first holding an
evidentiary hearing.  On this record, we
agree.  We therefore vacate the order
allowing the motion, as well as all resulting relief, and we remand for an
evidentiary hearing.
      Background.  a.  The
incident.[1]  On April 9, 2013, at
approximately 2 A.M., State police Trooper Robert Church found the defendant at
the scene of a one-car collision on Route 391 in the left lane.  The keys were in the ignition in the
"on" position; the taillights were illuminated.  The vehicle had extensive front-end damage
and appeared to Church to be totaled. 
The defendant was seated in the car when Church arrived but immediately
jumped out of the car and began to stumble toward Church's vehicle.  Church advised the defendant to keep his
hands out of his pockets and asked him what happened.
      The defendant stated that he was not
injured, and Church did not observe obvious injuries.  Trooper Donah arrived with a canine and
immediately conducted a patfrisk.  He
placed the defendant in handcuffs "as a precaution."  Church observed that the defendant had a hard
time forming a complete sentence without slurring his words and had obvious
balance issues.  The defendant swayed
from front to back and, while handcuffed but not yet Mirandized, admitted to
consuming two to three forty-ounce beers to celebrate his birthday.
      A record check with the registry of motor
vehicles revealed that the defendant's driver's license had been revoked and
that the vehicle's license plates were stolen. 
The defendant was told that he was being placed in custody for operating
without a valid license and OUI.  The
defendant told Church he was sorry and all he wanted to do was drive the car
back to Holyoke.  Due to their location
in the left lane of the highway, Church did not ask the defendant to attempt
any field sobriety tests (FSTs). 
      Once the defendant was placed in Church's
cruiser, Church could detect an overwhelming odor of alcoholic beverage that
had not been present before the defendant was placed in the cruiser.  The defendant's speech remained heavily
slurred, and his movements were exaggerated and slowed.
      Upon arrival at the Springfield State
police barracks, the defendant received Miranda warnings and agreed to take a
breathalyzer test.  The Alcotest 9510
breathalyzer test result revealed a blood alcohol content of 0.14 percent.  The arrest report does not state whether the
defendant was told the results of the breathalyzer test.  After the breathalyzer test, the defendant
told Church "that he had no intention on driving tonight because he knew
that he drank to[o] much alcohol," and that he had no choice to drive
because his friend left him and he had to get the vehicle to Holyoke.[2]  The defendant declined to take FSTs at the
barracks.  His speech was still heavily
slurred, and he still had extremely slow body movements.  
      Church completed a preprinted form on
which he answered, "YES" to entries for "Observed Driving,"
"Glassy Eyes," "Unsteady on Feet," "Bloodshot
Eyes," "Crash," and "Slurred Speech."  He described the odor of alcohol as
"MODER.," which we take to mean "moderate." 
      The defendant was charged with OUI, fourth
offense, and five other criminal offenses that did not have impairment by
liquor as an element:  operating with a
suspended license (subsequent offense), attaching number plates with intent to
conceal a vehicle's identity, operating an uninsured vehicle, receiving stolen
property (the number plates), and reckless operation.  The complaint also charged the defendant with
a civil infraction:  operating an
unregistered motor vehicle in violation of G. L. c. 90, § 9.
      b. 
The plea.  In May 2013, the
defendant pleaded guilty to so much of the OUI charge as alleged OUI, third
offense, and to the remaining five criminal charges.[3]  As agreed upon, he was sentenced to two years
in a house of correction on the charge of OUI, third offense, and to lesser
concurrent terms on two of the other charges, to be served concurrently with
committed sentences imposed two weeks earlier in an unrelated case.  The OUI, third offense, conviction required
that the defendant serve at least 150 days before becoming parole eligible.  G. L. c. 90,
§ 24 (1) (a) (1).
      c. 
Motion to vacate plea.  In 2022,
the defendant moved to vacate his plea. 
The defendant supported his motion with an affidavit from plea counsel
stating that, had he known of the government misconduct concerning the
breathalyzer at the time of the plea, it "may have affected" his
advice to the defendant on whether to accept a plea offer.  This was because the breathalyzer test
results "permitted the government to prosecute him on the per se theory of
the law and provided strong evidence for the Commonwealth under the impaired
theory of the law."  The defendant
also submitted an affidavit of postconviction counsel describing the results of
Statewide litigation over the Alcotest 9510 breathalyzer.
      Finally, the defendant filed his own
affidavit, referring only to the OUI charge, and averring that had he known the
breathalyzer test result could be challenged, he would not have accepted
"this plea" and instead would have gone to trial.  He also asserted that the lingering effects
of a previous stab wound to his stomach affected his movements and, the
affidavit implied, could have been mistaken for signs of intoxication. 
      The Commonwealth filed its opposition to
the defendant's motion in October 2023, four days before the hearing.  Briefly stated, the Commonwealth argued that
the defendant had made an insufficient factual showing that the defense theory
identified in his motion (the lingering effects of his stab wound) would have
increased the probability of his not pleading guilty, particularly given the substantial
benefits of the plea.  The Commonwealth
further argued that plea counsel's assertion that knowledge of the
inadmissibility of the breathalyzer evidence "may have affected" his
advice to the defendant on whether to plead guilty was insufficient to satisfy
the legal standard, discussed infra, for withdrawing a guilty plea.
      The Commonwealth contrasted the evidence
here to that in Commonwealth v. Hallinan, 491 Mass. 730, 751 (2023), where plea
counsel asserted that had he known of the breathalyzer test result's
inadmissibility, he "would have advised the defendant to proceed to
trial."  The Commonwealth also
argued that, in any event, the defendant's motion did not expressly seek, and
showed no basis for, withdrawal of his pleas to the offenses other than
OUI.  The Commonwealth supported its
opposition with an affidavit from the plea prosecutor asserting that, had the
defendant declined to accept the plea agreement in 2013, the prosecutor was
authorized to refer the case for indictment in Superior Court.[4]  The Commonwealth requested that the motion be
denied without an evidentiary hearing or, in the alternative, that an
evidentiary hearing be held at which the Commonwealth could challenge the
defendant's factual assertions.
      On the morning of the hearing, the
defendant filed a supplemental memorandum asserting, without supporting
affidavits, two additional strategies or defenses that he could have pursued
had he not pleaded guilty (new defenses). 
The first new defense was that his admissions to having consumed alcohol
were subject to a viable motion to suppress. 
He argued that he did not file the motion at the time because he still
would have been faced with the evidence from the breathalyzer test -- but that,
had he known the test result would be inadmissible, he would have litigated a
motion to suppress instead of pleading guilty.
      The defendant's second new defense was
that, without the breathalyzer test result and his admissions, the case would
have turned on Church's credibility.  The
defendant submitted news articles from 2019 and 2020 reporting that Church had
been implicated in a well-publicized scandal involving fraudulent overtime
claims by a number of troopers.  The
defendant also submitted a 2014 decision in an unrelated case in which a judge
found that Church had engaged in coercive conduct during an OUI arrest and,
accordingly, granted that defendant's motion to suppress "all evidence of
the events commencing with Trooper Church's demand that [that defendant]
perform field sobriety tests through the completion of such tests."
      The judge here held a nonevidentiary
hearing and allowed the motion from the bench without making findings of
fact.  The defendant argued, and the
Commonwealth conceded, that with the breathalyzer test result excluded, the
Commonwealth's remaining evidence would have consisted of Church's testimony.[5]  The judge stated that he shared a Federal
judge's concern that the overtime fraud could have started as much as ten years
earlier, which would have been before the plea in this case.[6]  A docket entry dated October 24, 2023,
reflects that the pleas on all seven charges were vacated.  The Commonwealth appealed.  
      Discussion.  1. 
Standard of review.  A motion to
withdraw a guilty plea is treated as a motion for a new trial under Mass.
R. Crim. P. 30 (b), as appearing in 435 Mass. 1501
(2001).  That rule provides in pertinent
part that "[t]he trial judge upon motion in writing may grant a new trial
at any time if it appears that justice may not have been done" and that
"[u]pon the motion the trial judge shall make such findings of fact as are
necessary to resolve the defendant's allegations of error of law."  Id.  We
review a judge's decision on such a motion "for abuse of discretion or
significant error of law." 
Hallinan, 491 Mass. at 744.  We
show "special deference to the action of a motion judge who was also the
[plea] judge."  Commonwealth v.
Grace, 397 Mass. 303, 307 (1986).
      Under Hallinan, 491 Mass. at 731,
"defendants [charged with OUI] who pleaded guilty or who were convicted
after trial, and the evidence against whom included breath test results from an
Alcotest 9510 device last calibrated and certified prior to April 18,
2019," as is the case here, "are entitled to a conclusive presumption
of egregious government misconduct" and the exclusion of the breath test
results from trial.  Such a defendant is
permitted to rely on that presumption in a motion to withdraw a guilty plea or
for a new trial.  See id.  In addition, the defendant must show that
"the misconduct influenced [the defendant's] decision to plead guilty or,
put another way, that it was material to that choice."  Id. at 744-745, citing Commonwealth v. Scott,
467 Mass. 336, 346 (2014); Ferrara v. United States, 456 F.3d 278, 290 (1st
Cir. 2006) (hereinafter, Scott-Ferrara). 
      These showings are inherently case
specific.  The Supreme Judicial Court
elaborated on how a defendant can, as required, "demonstrate a reasonable
probability that [the defendant] would not have pleaded guilty had [the
defendant] known of [the government] misconduct."  Hallinan, 491 Mass. at 750.  "Establishing such a reasonable
probability requires examining the totality of the circumstances," guided
by several factors, which include 
"(1) whether
evidence of the government misconduct could have detracted from the factual
basis used to support the guilty plea, (2) whether the evidence could have been
used to impeach a witness whose credibility may have been
outcome-determinative, (3) whether the evidence is cumulative of other evidence
already in the defendant's possession, (4) whether the evidence would have
influenced counsel's recommendation as to whether to accept a particular plea
offer, and (5) whether the value of the evidence was outweighed by the benefits
of entering into the plea agreement."
Id., quoting
Scott, 467 Mass. at 355.
      In Hallinan, 491 Mass. at 750, the Supreme
Judicial Court described the breathalyzer test result, which was 0.23 percent,
as "the 'crown jewel' -- the most inculpatory piece of evidence against
the defendant."  While the
breathalyzer test result may have been the "crown jewel" in Hallinan,
that is not the standard that every defendant must meet.
      We also note that although a judge has
discretion to deny a new trial motion on the affidavits, "[a] judge's
power to grant such a motion on the papers is more circumscribed."   Commonwealth v. Gordon, 82 Mass. App. Ct.
389, 394 (2012).  "Generally, 'where
a substantial issue is raised and is supported by a substantial evidentiary
showing, the judge should hold an evidentiary hearing.'"  Id. at 394-395, quoting Commonwealth v.
Stewart, 383 Mass. 253, 260 (1981).  See
Commonwealth v. Ubeira-Gonzalez, 87 Mass. App. Ct. 37, 40 (2015).  "Holding an evidentiary hearing provides
the Commonwealth the opportunity to challenge the evidence presented in the
affidavits," and it "enables the judge to make the findings of fact
required to decide the motion." 
Gordon, supra at 395.  To be sure,
though granting a new trial motion without an evidentiary hearing is unusual,
"[a]n evidentiary hearing may not be necessary . . . if the
substantial issue raised is solely a question of law, or if the facts are
undisputed in the record."  Id.  If there is an issue of fact, "it is the
defendant's burden to prove facts that are neither agreed upon nor apparent on
the face of the record" (quotation and citation omitted).  Ubeira-Gonzalez, supra at 41.
      2. 
Reasonable probability defendant would not have pleaded guilty.  If the judge had applied the above
principles, the judge could not properly have allowed the motion on this
record.  "The reasonable probability
analysis must be based on the actual facts and circumstances surrounding the
defendant's decision at the time of the guilty plea in light of the one
hypothetical question of what the defendant reasonably may have done if he had
known of [the governmental] misconduct." 
Scott, 467 Mass. at 357.[7]
      We are unwilling to assume that the judge
made implied findings of the Scott-Ferrara factors or to conclude on this
record that, had the defendant known that the breathalyzer test results could
not be used against him at trial, there was a reasonable probability that he
would not have pleaded guilty.  To be
sure, the Commonwealth acquiesced in the judge's suggestion that a motion to
suppress a defendant's admissions was "something any defendant and defense
attorney would have thought about." 
But that is not dispositive.  The
Commonwealth did not agree, nor did the judge conclude, that such a motion
would have had enough likelihood of success in this specific case to have been
a material factor bearing on the defendant's decision whether to plead
guilty.  Nor are we willing to assume
that the short police report stated every detail that transpired and that might
be relevant to a suppression motion. 
Without findings on these issues, "we cannot determine whether a
reasonable person in the defendant's position" would have pursued the
motion to suppress rather than agree to the plea.  Commonwealth v. Rodriguez, 101 Mass. App. Ct.
54, 58-59 (2022) (reversing order that, without evidentiary hearing or findings
on strength of potential suppression argument, allowed motion to withdraw
guilty plea).
      Similarly, although the Commonwealth
agreed that all other evidence would have come from Church and seemingly agreed
with the judge that Church's credibility could be called into question based on
the information contained in the news articles from 2019 and 2020, the
Commonwealth did not agree that this information was known at the time the
defendant pleaded guilty in 2013, or was knowable had the high breathalyzer
test result not deterred investigation in the sense that such an inculpatory
result made any investigation futile. 
Had the defendant's investigation not been deterred, and unless Church's
misconduct were to rise to governmental misconduct such that it is subject to
its own Scott-Ferrara analysis, the misconduct would have needed to have been
at least reasonably knowable to the defendant before the plea for it to have
played a role in his decision whether to plead guilty.  See Scott, 467 Mass. at 357-358.  On this record, the judge did not and had no
basis to find this to be the case.[8]
      Even apart from the Hallinan issue, the
defendant argues he could withdraw his plea on the theory that Church's
credibility problems by themselves constituted either newly discovered evidence
or improperly withheld exculpatory evidence. 
The Supreme Judicial Court has suggested that a defendant seeking to
withdraw a plea on such grounds still needs to show a reasonable probability
that he would not have pleaded guilty had he known of that evidence.  See Commonwealth v. Henry, 488 Mass. 484,
495-496 (2021), citing Scott, 467 Mass. at 360-361.  Although the judge questioned whether
"the government [would] be comfortable with a conviction based on
[Church's] credibility," and thus was concerned "that justice may not
have been done," Mass. R. Crim. P. 30 (b), the judge still needed to
make findings on the reasonable probability issue before he could allow the
motion.  See Henry, supra.  
      On remand, if the defendant presses the
argument that evidence tending to undermine Church's credibility provides a
basis for a new trial, the judge should conduct an evidentiary hearing on the
issue and make findings of fact.  Of course,
the Commonwealth may now have discovery obligations concerning Church.  See Commonwealth v. Gaines, 494 Mass. 525,
546 (2024) ("Disclosure under [Mass. R. Prof. C. 3.8 (d)], as
appearing in 473 Mass. 1301 (2016)], is neither time limited, nor is it predicated
on a request by a defendant for exculpatory information" and
"requires that the prosecution 'make timely disclosure to the defense of
all evidence or information known to the prosecutor that tends to negate the
guilt of the accused or mitigates the offense'" [citation omitted]);
Graham v. District Attorney for the Hampden Dist., 493 Mass. 348, 361-362
(2024) ("A prosecutor's duty to disclose extends to all facts within the
'possession, custody, or control' of a member of the prosecution team,"
"including police officers on the team" [citation omitted]).
      Because these questions may arise in this
case on remand and because there are potentially thousands of similarly
situated defendants,[9] we review some important factors the Supreme Judicial
Court and this court have considered to date in appeals from orders granting or
denying defendants' motions for new trial based on the governmental misconduct
involving the Alcotest 9510 breathalyzer devices.  The Commonwealth can meet its burden of
proving a charge of OUI through a variety of evidence, including, without
limitation, FSTs, police or witness observations, blood tests, and statements
by defendants.  See Hallinan, 491 Mass.
at 749.
      We have considered the breathalyzer test
result, not for its accuracy but because a higher result may have strongly
influenced a defendant's acceptance of a plea or admission to sufficient
facts.  See Hallinan, 491 Mass. at 731
(in OUI, second offense, with breathalyzer result of 0.23 percent, counsel
advised defendant her case was "unwinnable").  We also have examined the strength of the
Commonwealth's case without the breathalyzer test, such as whether the
defendant exhibited the "classic symptoms of alcohol intoxication,"
including glassy and bloodshot eyes, an odor of alcohol, and slurred
speech.  Commonwealth v. Gallagher, 91
Mass. App. Ct. 385, 392-393 (2017). 
Additionally, panels of this court, in unpublished memoranda and orders
pursuant to our rule 23.0, have looked to whether an officer or another witness
observed erratic driving or if there was a car accident, whether alcohol was
present in the vehicle, and if the defendant admitted to drinking.  Moreover, panels have considered whether the
Commonwealth could present evidence of the defendant's performance on FSTs.
      Our cases also have considered two other
important factors.  First, a motion judge
may consider the strength of the affidavit of plea counsel.  In Hallinan, 491 Mass. at 751, plea counsel's
affidavit was particularly strong.  He
stated unequivocally that "[h]ad he known . . . that the
breathalyzer test was not admissible, he would have advised the defendant to
proceed to trial, as, in his experience, juries tend to acquit in similar cases
where there is no breathalyzer result and no accident."  Id. 
Here, plea counsel stated in his affidavit that knowing the breathalyzer
test result was not admissible "may have affected my advice to [the
defendant] and my recommendation as to whether he should accept a plea
offer" (emphasis added).  Such an
equivocal affidavit may not shed light on whether a defendant should be
permitted to withdraw a guilty plea.  As
for the defendant's own affidavit asserting what the defendant would have done
with the knowledge that the breathalyzer test result would be inadmissible,
"because a judge cannot evaluate whether the defendant is telling the
truth about a decision the defendant never made," the court is required to
"evaluate [the defendant's] assertion under a reasonable person
standard."[10]  Commonwealth v.
Lavrinenko, 473 Mass. 42, 55 n.16 (2015).
      Second, the motion judge should consider
whether "the disposition that the defendant received was not so favorable
that the benefits of the plea outweighed the value of the evidence."  Hallinan, 491 Mass. at 751.  This might include considering whether there
were charge concessions, sentences were made concurrent with other charges, and
whether alcohol impairment was an element of the other charges.[11]  Here, for example, the plea agreement allowed
the defendant to serve the committed sentences concurrently with committed
sentences imposed two weeks earlier in an unrelated complaint for assault and
battery by means of a dangerous weapon and OUI, third offense.  The defendant also avoided indictment for
OUI, fourth offense, which carried potential State prison time and a mandatory
minimum sentence that required he serve twelve months before becoming parole
eligible.
      The Hallinan decision is a helpful
guidepost in employing these factors. 
After removing from consideration the breathalyzer test result of 0.23
percent and analyzing the remaining evidence and circumstances, the Supreme
Judicial Court reversed the order denying the defendant's motion to withdraw
her admission to sufficient facts to OUI, second offense.  See Hallinan, 491 Mass. 750-751.  The court considered that the defendant
"was unable to complete [a series of FSTs] successfully" and that she
displayed classic signs of intoxication (red and glassy eyes, slurred speech,
odor of intoxicating liquor, and "seemed dazed").  Id. at 732. 
However, the police did not observe erratic driving (the defendant was
stopped at a sobriety checkpoint), and although the defendant was charged with
OUI, second offense, the Commonwealth did not offer a charge concession as part
of the plea.  See id. at 731-732,
751.  Moreover, the disposition was
"not so favorable that the benefits of the plea outweighed the value of
the evidence," and her plea counsel's affidavit was unequivocal in stating
that "juries tend to acquit in similar cases where there is no
breathalyzer result and no accident." 
Id. at 751. 
      Conclusion.  We vacate the order allowing the motion to
withdraw the guilty plea and the relief described in the October 
24, 2023 docket
entry.  We remand for further proceedings
consistent with this opinion.
So ordered.

footnotes

[1] No transcript
of the plea hearing is in the appellate record; defense counsel did not detail
the steps taken to procure it but represents that due to the passage of time it
cannot be produced.  Except where
indicated, the facts herein are drawn from police reports and are not in
dispute.  There was no video evidence. 

[2] The police
report does not state whether the defendant had been informed of the
breathalyzer test results and then made the statements.

[3] The civil
infraction of operating an unregistered vehicle was disposed of by a finding of
responsible and was placed on file with the defendant's consent.

[4] The
Commonwealth's affidavit did not challenge the defendant's factual assertion
that he suffered the effects of a previous stab wound.  The opposition argued, however, that these
effects did not call into question any of the observations noted in Church's
arrest report.

[5] Donah arrived
moments after Church, and two other troopers arrived later, though all reports
were prepared by Church.   
[6] The Federal
judge's concern was reported in one of the news articles submitted by the
defendant.

[7] We dispose
summarily of the Commonwealth's claim that the defendant waived any argument
based on his new defenses by not raising those claims in his original
motion.  The arguments were raised in a
supplemental memorandum, which is sufficient. 
The Commonwealth relies on Mass. R. Crim. P.
30 (c) (2), as appearing in 435 Mass. 1501 (2001).  But that provision creates a waiver rule
that, by its terms, applies to subsequent motions arguing additional grounds
for relief that were not previously claimed and could have been, not to additional
arguments made in a supplemental memorandum in support of an original motion.

[8] We recognize
that
"a judge, in
deciding whether to allow a police officer witness in the interest of justice
to be impeached with prior misconduct, may consider the age of the prior
misconduct, the strength of the evidence of the prior misconduct and the
simplicity of establishing it, and whether the prior misconduct is probative of
how the officer conducts police investigations. . . . As to whether
the prior misconduct is probative of how the officer conducts police
investigations, a judge may consider whether the misconduct reflects a
willingness to lie to win a conviction or instead involves matters that,
although serious, do not bear on the integrity of police investigations, such
as taking unauthorized sick time or inflating overtime hours.  Concealing police brutality against an
arrestee, whether by the officer or a fellow officer, or making false
statements that might lead to an unjust conviction are for law enforcement
officers the equivalent of high crimes and misdemeanors in this regard."
Matter of a Grand
Jury Investigation, 485 Mass. 641, 652 (2020). 

[9] The Supreme
Judicial Court estimated that approximately 27,000 defendants may be
impacted.  See Hallinan, 491 Mass. at
731.

[10] In cases
alleging ineffective assistance of plea counsel, "in order to satisfy the
'prejudice' requirement, the defendant must show that there is a reasonable
probability that, but for counsel's errors, he would not have pleaded guilty
and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59
(1985).  For example, in the somewhat analogous
context of a motion to withdraw a guilty plea based on counsel's deficient advice
regarding immigration consequences, a defendant must minimally meet the
"reasonable probability" standard as set forth in Hill, supra.  See Commonwealth v. Clarke, 460 Mass. 30, 47
(2011), abrogated on other grounds by Chaidez v. United States, 568 U.S. 342
(2013).  "In addition, [the
defendant] must convince the court that a decision to reject the plea bargain
would have been rational under the circumstances," which may be proved,
among other ways, by showing that the defendant "had an available, substantial
ground of defence that would have been pursued if [the defendant] had been
correctly advised of the dire immigration consequences attendant to accepting
the plea bargain" (quotations and citations omitted).  Clarke, supra.  See Commonwealth v. Lavrinenko, 473 Mass. 42,
55-56 (2015) (discussing "reasonable probability" standard and citing
Scott, 467 Mass. at 361, and Ferrara, 456 F.3d at 294).

[11] Of course,
in some instances the Commonwealth may make a charge concession because the
Commonwealth may have concerns about its ability to prove a particular charge.