APPEALS COURT 
 
 COMMONWEALTH vs. RICARDO LOPEZ

 
 Docket:
 24-P-372
 
 
 Dates:
 January 6, 2025 – October 9, 2025
 
 
 Present:
 Englander, Hodgens, & Smyth, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Alien. Practice, Criminal, New trial, Assistance of counsel, Plea, Appeal. Breaking and Entering. Destruction of Property. Constitutional Law, Assistance of counsel. Due Process of Law, Assistance of counsel.
 
 

       Complaint received and sworn to in the
Lawrence Division of the District Court Department on July 26, 1999. 
      A motion for a new trial, filed on October
25, 2021, was heard by Kevin J. Gaffney, J., and considered by Mark A.
Sullivan, J., and a motion for reconsideration also was considered by him.
      Rachel Chunnha for the defendant.
      Kristen Wekony Jiang, Assistant District
Attorney, for the Commonwealth.
      ENGLANDER, J.  The defendant seeks a new trial based on
alleged ineffective assistance of counsel. 
In 1999, the defendant, an undocumented immigrant, was charged with
assault and battery, breaking and entering in the nighttime with intent to
commit a felony, and malicious destruction of property over $250.  Of these offenses, the latter two are
considered "crimes of moral turpitude" under the immigration
laws.  Following a bench trial in District
Court in 2000, the defendant was convicted of the breaking and entering charge,
and the lesser included offense of malicious destruction of property under
$250.
      Many years later, the defendant learned
that his conviction of breaking and entering with intent to commit a felony
foreclosed a path to permanent residency. 
This path had otherwise become available when the defendant's mother
became a naturalized citizen, which occurred after his trial.  In 2021 the defendant moved for a new trial,
arguing (1) that trial counsel did not advise the defendant of the
immigration consequences of a conviction, and in particular, that a conviction
after trial could foreclose a specific path to permanent residency; and
(2) that trial counsel did not advise the defendant of his right to appeal
or file a notice of appeal.
      A District Court judge denied the motion
for a new trial, as well as a motion for reconsideration.  The defendant presses his arguments again on
appeal.  The defendant's first argument
regarding immigration consequences fails, as this case is controlled by
Commonwealth v. Marinho, 464 Mass. 115, 128-130 (2013), in which the Supreme
Judicial Court ruled, under similar circumstances, that the defendant in that
case had not shown prejudice because he had not demonstrated a reasonable
probability that he could have achieved the plea bargain he posited in his
motion for a new trial.  As to the
failure to file a notice of appeal, we must remand the matter as to this issue
to the District Court, which under the circumstances needed to hold an
evidentiary hearing to determine whether the defendant received ineffective
assistance regarding the appeal and if so, whether the defendant otherwise
would have timely appealed from his convictions.
      Background.  The following facts are drawn from the
limited record before us, which includes a portion of a police report, the
defendant's affidavit, and trial counsel's unsworn statements in e-mail
messages to motion counsel.  The
defendant did not submit an affidavit from trial counsel in connection with the
motion for a new trial.[1]
      Per the defendant's affidavit, he is a
Guatemalan national who entered the United States in 1995.  It is undisputed that he entered
unlawfully.  In July of 1999, the
defendant was arrested and charged with assault and battery, breaking and
entering in the nighttime with intent to commit a felony, and malicious
destruction of property over $250.  The
evidence in the record differs as to the events leading to the defendant's
arrest.  According to the portion of the
police report in the record, two men (the car owners) flagged down an officer
to report that someone had broken into their car.  The car owners were eating dinner when they
heard a loud noise; on leaving the restaurant, they found several men standing
next to their car, which had a broken window. 
The car owners confronted the men, and a fight ensued.  The remainder of the arrest report is not in
the record, but evidently the defendant was arrested as a result of this
altercation.
      In his affidavit, the defendant admits
that he was present at this incident, but avers that it was another man in his
group who broke the car window.  The
defendant also avers that the owners of the car started fighting him and his
group, and that he acted in self-defense.
      Regarding the assistance of counsel, the
defendant states the following:  that he
was appointed counsel, that he told trial counsel that he was innocent, and
that trial counsel gave him the option of pleading guilty or going to
trial.  The defendant further avers that
trial counsel never told him that the case would result in immigration
consequences.  Trial counsel, on the
other hand, states in his e-mail messages that he advised the defendant that
"more likely than not" the defendant would be deported, denied
readmission, and denied citizenship.
      The case was tried, jury waived, in
February of 2000.  Per the defendant's
affidavit, the owner of the car testified and accused the defendant at
trial.  Ultimately the defendant was
acquitted of assault and battery, convicted on the breaking and entering
charge, and convicted of the lesser included offense of malicious destruction
of property under $250.  He was sentenced
to six months of probation.
      Twenty years later, the defendant sought
to become a permanent resident of the United States.  This was a possibility because the defendant's
mother had become a naturalized citizen; motion counsel represented that the
defendant's mother's naturalization occurred after trial.  The defendant asserts that on seeking the
advice of immigration counsel, he learned that his breaking and entering
conviction rendered him inadmissible to the United States, and therefore
ineligible for permanent residency.
      In October of 2021, the defendant moved
for a new trial with respect to his convictions.  Among the grounds therefor were that the
defendant was allegedly deprived of effective assistance of counsel, because
(1) trial counsel did not negotiate an "immigration-safe" plea,
and did not inform the defendant of the immigration consequences of a guilty
verdict; and (2) trial counsel failed to advise him regarding the filing
of a notice of appeal.  After a
nonevidentiary hearing, the motion judge, who was not the trial judge, denied
the motion.  The defendant moved for
reconsideration, attaching to his motion e-mail messages between motion counsel
and trial counsel.  This motion was also
denied.
      Discussion.  1. 
Immigration consequences.  The
defendant first argues that in 2000, prior to trial, trial counsel should have
advised him that if he was convicted, certain convictions would render him
inadmissible and prevent him from becoming a lawful resident of the United
States, and that if later apprehended by Federal authorities, "his
deportation would be mandatory, with no potential avenue for discretionary
relief."  The defendant further
argues that he should have been advised that he could pursue a plea bargain
that was (allegedly) "immigration-safe" -- in his case, by pleading
guilty to lesser included offenses with respect to breaking and entering and
malicious destruction of property.[2]
      "We review the denial of a
defendant's motion for a new trial for a significant error of law or other
abuse of discretion."  Commonwealth
v. Torres, 495 Mass. 1008, 1010 (2024). 
However, "[w]hen, as here, the motion judge did not preside [at
trial] . . . , we regard ourselves in as good a position as the
motion judge to assess the . . . record."  Commonwealth v. Martinez, 86 Mass. App. Ct.
545, 550 (2014), quoting Commonwealth v. Petetabella, 459 Mass. 177, 181 (2011).  The motion judge has the discretion to deny a
new trial motion on the affidavits, where no substantial issue is raised.  See Commonwealth v. Denis, 442 Mass. 617, 629
(2004); Commonwealth v. Gordon, 82 Mass. App. Ct. 389, 394 (2012), quoting
Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass.
1501 (2001).  However, "[g]enerally,
'where a substantial issue is raised and is supported by a substantial
evidentiary showing, the judge should hold an evidentiary hearing,'"
allowing the judge to make the required factual findings to decide the
motion.  Gordon, supra at 394-395,
quoting Commonwealth v. Stewart, 383 Mass. 253, 260 (1981).
      To show ineffective assistance of counsel,
under the familiar Saferian standard the defendant must make two showings:  that counsel's performance fell
"measurably below that which might be expected from an ordinary fallible
lawyer," and that counsel's performance "likely deprived the
defendant of an otherwise available, substantial ground of defence."  Marinho, 464 Mass. at 123, quoting
Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  In analyzing the first Saferian prong, we
look to the "professional standards of the legal community."  Commonwealth v. Lavrinenko, 473 Mass. 42, 51
(2015), quoting Commonwealth v. Clarke, 460 Mass. 30, 45 (2011), abrogated in
part by Chaidez v. United States, 568 U.S. 342 (2013).  "The weight of prevailing professional
norms supports the view that counsel must advise [his or] her client regarding
the risk of deportation," Lavrinenko, supra, quoting Padilla v. Kentucky,
559 U.S. 356, 367 (2010), whether resulting from a guilty plea or conviction
after trial; however, the extent of this obligation "is tied to the
clarity of the law regarding the immigration consequences of [the
disposition]," Commonwealth v. Taron T., 104 Mass. App. Ct. 219, 226 (2024).  As to the second Saferian prong, where, as
here, the defendant alleges that he would have pleaded guilty instead of going
to trial, "the defendant must show a reasonable probability that the
result of a plea would have been more favorable than the outcome of the
trial."  Marinho, supra at 129.  "In particular, the defendant must
demonstrate a reasonable probability that the prosecution would have made an
offer, that the defendant would have accepted it, and that the court would have
approved it."  Id.
      Turning to the case at bar, we note first
that we have serious doubt that the defendant could show that counsel fell
"measurably below" professional standards by failing to give the
advice that the defendant now posits. 
Defense counsel's advice in this case was given in the year 2000, eleven
years before Padilla was decided.  There
is no evidence in the record as to the advice an "ordinary fallible"
defense attorney would have been expected to give at that time.  See Lavrinenko, 473 Mass. at 51.  Moreover, as we discuss in more detail infra,
the defendant's theory of how he was prejudiced by ineffective assistance
posits that defense counsel was required to construct, to avoid supposed
immigration consequences, a sophisticated plea-bargain structure that then
needed to be (1) offered by the prosecutor, and (2) accepted by the
defendant and the judge.  We need not
decide whether counsel's performance was ineffective, however, because we think
it clear that the defendant has not met his burden as to prejudice.
      Our analysis as to the second Saferian
prong is controlled by the Supreme Judicial Court's decision in Marinho.  In that case, the defendant was also
convicted after trial.  Marinho, 464
Mass. at 116.  Prior to trial, counsel
had provided no advice to the defendant (who was undocumented) as to the
immigration consequences of an aggravated felony, and had not informed the
defendant that the prosecution was interested in discussing a plea.  Id. at 117, 125 n.13, 127.  The court held that counsel was ineffective,
but that the defendant could not show prejudice.  Id. at 128-133.  Driving the court's decision was that the
defendant could not show that there was a plea bargain available that could
have avoided the immigration result the defendant later faced:
"The
defendant offered no evidence that the prosecutor would have offered him a
favorable plea bargain, or that the judge would have accepted one.  Evidence that there was no plea negotiation
also does not establish that there was any real opportunity to avoid the
immigration consequences of a conviction, particularly for an undocumented
person.  The reality of the defendant's
status as an undocumented person living in the United States was that he was
deportable per se on account of his unlawful status. . . .  Although plausible, we have been shown no
evidence that the defendant's criminal activity made him a more likely target
for deportation."
Id. at 130-131.
      In the present case, just as in Marinho,
the defendant has not shown prejudice. 
Indeed, this case is nearly identical to Marinho, and the one
difference, discussed below, does not change the result.  The defendant has not adduced any evidence
that the prosecutor would have offered, or that the judge would have accepted,
a plea bargain that would have resulted in the lack of immigration consequences
that the defendant now wishes to achieve. 
See Marinho, 464 Mass. at 130. 
Just as with the defendant in Marinho, the defendant here was
undocumented and accordingly he was both inadmissible, and "per se"
subject to removal, before any trial had occurred.  See 8 U.S.C. § 1182(a)(6)(A)(i), as
amended through December 3, 1999; Marinho, supra.  Also as in Marinho, the defendant here has
not shown that his convictions put him at any higher risk of removal than the
risk he already was facing, given that he was undocumented.  See Marinho, id. at 131.
      The sole difference between this case and
Marinho is that here the defendant has identified one immigration consequence
that a favorable plea allegedly could have avoided -- namely, that conviction
of a crime of moral turpitude rendered the defendant ineligible for a form of
discretionary relief from inadmissibility known as an unlawful presence waiver,
available to the children of United States citizens.[3]  See 8 U.S.C. § 1182(a)(9)(B)(v).  Put differently, the defendant contends that
if, rather than going to trial, he had instead pleaded guilty to
(1) assault and battery, (2) the lesser included offense of malicious
destruction of property under $250, and (3) the lesser included offense of
breaking and entering with the intent to commit a misdemeanor, he would still
have been eligible in 2021 for the unlawful presence waiver.
      We pause here to note the range of
unlikely assumptions that are buried in this argument -- in particular, that
under the professional standards of the time, defense counsel was required to
learn and to advise the defendant of a possible plea bargain structure that
allegedly would have preserved the possibility to obtain this unlawful presence
waiver, even though the defendant was a deportable, undocumented immigrant with
no relatives who were then United States citizens.  The defendant's theory of what was required
of defense counsel in terms of immigration advice is accordingly, farfetched --
the defendant offers no expert opinion, or even argument, as to why such advice
would have been required (or considered) given the time and the circumstances.[4]
      However, even if we assume that counsel's
failure to advise of this potential consequence and to structure a possible
plea bargain could constitute ineffective assistance under the circumstances,
the defendant has not shown prejudice here. 
The defendant has not shown a "reasonable probability" that
he, the prosecution, and the judge would have agreed to a guilty plea that
would have preserved the defendant's eligibility for an unlawful presence
waiver.  See Marinho, 464 Mass. at
129.  As previously stated, there is no
evidence that the prosecution would have agreed to such a plea.  Furthermore, the defendant has not shown a
reasonable probability that he would have accepted such a plea at the time of
trial.[5]  See id.  Cf. Lavrinenko, 473 Mass. at 55 (in context
of guilty plea, to show prejudice, defendant must show reasonable probability
that reasonable person would have gone to trial under the circumstances).  The defendant has put forth evidence that
remaining in the United States would have been important to him at the time --
namely, that his wife and child had recently moved to be with him.  But at the time of trial the defendant was
already deportable and not eligible for an unlawful presence waiver, as his
mother was not then a citizen; moreover, the defendant's position was that he
was innocent and that he wanted to go to trial. 
Accordingly, regardless of the importance that the defendant placed on
immigration consequences in general, he has not shown a reasonable probability
that he would have pleaded guilty to the hypothetical,
"immigration-safe" plea.
      2. 
Failure to advise of appeal and to file notice of appeal.  The defendant also argues that trial counsel
was ineffective by not discussing an appeal with him and by not filing a notice
of appeal after the defendant's convictions. 
As to this issue, we are constrained to remand this matter for an
evidentiary hearing.  There is no
indication in the record that a notice of appeal was ever filed.  The defendant averred, in his affidavit, that
his lawyer "never even brought [the possibility of appeal] up."  There is no affidavit from trial counsel, but
in his e-mail messages he stated that it was his practice to seek an appeal
only when he identified "an error of law was made," and that he
"made note that [he] questioned an appeal in this case."
      If counsel never discussed the possibility
of an appeal with his client, that may constitute ineffective assistance.  See Roe v. Flores-Ortega, 528 U.S. 470,
479-480 (2000); Commonwealth v. Trussell, 68 Mass. App. Ct. 452, 457 & n.5
(2007).  Cf. Commonwealth v. Fabian F.,
83 Mass. App. Ct. 394, 398-400 (2013). 
Moreover, such a failure, if ineffective, would fall into a category of
ineffective assistance where "counsel's shortcomings during the appellate
process have altogether deprived a defendant of review on direct
appeal."  Commonwealth v. Alvarez,
69 Mass. App. Ct. 438, 441 (2007).  In
such a case, our cases state that "the defendant is not required to
specify or argue the appellate issues that he would raise were his appeal
reinstated."  Id.  Rather, if the defendant shows (1) that
counsel was ineffective as to the defendant's appellate rights, either because
counsel never discussed with the defendant the possibility of appeal when the
ordinary fallible lawyer would have done so, or for some other meritorious
reason, and (2) that the defendant would have pursued an appeal, if
properly advised, then the defendant must be allowed to pursue his appellate
rights (through an appeal or motion for a new trial).  See White v. Commonwealth, 479 Mass. 1023,
1024-1026 (2018), S.C. 496 Mass. 1003 (2025); Alvarez, supra at 441, 442 n.1,
443 n.4; Trussell, supra at 457 & n.5. 
See also Roe, supra at 476-480, 484.
      Applying these principles to the case at
bar admits of some difficulty, because the operative facts occurred over twenty
years ago.  The first issues before the
motion judge are factual questions:  was
counsel ineffective as to the right of appeal, and would the defendant have
appealed if counsel had not been ineffective. 
As to those issues, we note that the defendant has shown no evidence
that he sought, or even considered, an appeal over the past twenty-plus
years.  However, while relevant, the
passage of time alone is not dispositive of whether the defendant would have
pursued an appeal.  Here the defendant
alleged, in his affidavit, that his lawyer never discussed an appeal with him,
and that if he knew he could appeal, he would have.  Furthermore, trial counsel stated in his
e-mail messages that he "questioned an appeal in this case."  The defendant has made a sufficient factual
showing to require an evidentiary hearing as to this issue, and we remand
solely for that purpose.
      We recognize the further, significant
practical problems if the defendant is ultimately allowed to pursue an appeal,
given that apparently there is no transcript of the trial, or any way to create
a verbatim transcript at this point.  We
emphasize that the only remedy we are recognizing at this point is the possible
right to pursue an appeal; it would remain the defendant's burden to
demonstrate that prejudicial error occurred at trial.  The delay in pursuing the appeal is not to be
visited on the Commonwealth.
      Conclusion.  So much of the order denying the motion for a
new trial and order denying the motion for reconsideration that were entered as
to trial counsel's alleged ineffectiveness regarding the defendant's right to
an appeal and counsel's failing to file a notice of appeal are vacated.  The orders are otherwise affirmed.  The case is remanded to the District Court
for further proceedings consistent with this opinion.
So ordered. 

      SMYTH, J. (concurring in part and
dissenting in part).  I concur with the
court that the case should be remanded for an evidentiary hearing and further
findings as to whether trial counsel ever discussed the possibility of appeal
with the defendant.  However, I dissent
from the court's conclusion that the judge properly denied the defendant's
motion for a new trial as it pertained to trial counsel's failure to provide
adequate immigration warnings to the defendant.
      Instead, I conclude that the defendant
demonstrated that his trial counsel's performance was deficient under the
protections of both the United States Constitution and Massachusetts
Declaration of Rights because trial counsel failed to advise the defendant that
a conviction on two of the charged offenses would adversely impact the
defendant's ability to lawfully remain in the United States.  As such, the defendant satisfied the first,
or performance, prong of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
      Concerning Saferian's prejudice prong,
trial counsel's failure to correctly warn the defendant of the clear
immigration consequences of a conviction caused the defendant to forgo seeking
an immigration-safe plea.  The defendant
instead proceeded to trial unaware of the immigration consequences that a
conviction would have on him and his family. 
The defendant's submissions established the existence of a substantial
issue as to prejudice, requiring an evidentiary hearing.  Specifically, the defendant is entitled to an
evidentiary hearing at which he would bear the burden to prove a reasonable
probability that he would have successfully negotiated a plea bargain had he
known of the adverse immigration consequences, and further, that the result of
the plea would have been more favorable to him, as to adverse immigration
consequences, than the outcome of his trial. 
See Commonwealth v. Marinho, 464 Mass. 115, 129-130 (2013); Commonwealth
v. Clarke, 460 Mass. 30, 47-48 (2011), abrogated in part by Chaidez v. United
States, 568 U.S. 342 (2013).  Thus, I
would remand for that additional purpose.
      Background.  This case exemplifies the difficulties
defendants moving for a new trial sometimes experience when seeking assistance
from prior counsel.  See, e.g.,
Commonwealth v. Miller, 101 Mass. App. Ct. 344, 352 (2022) ("we have
recognized that prior counsel may repeatedly refuse to respond to
communications from successor counsel or may refuse to provide an affidavit
despite having favorable information to assist the former client").  In preparation for the defendant's motion for
a new trial, motion counsel contacted trial counsel to request an affidavit
describing trial counsel's immigration advice to the defendant and information
regarding the lack of a notice of appeal. 
Trial counsel refused to provide an affidavit or assist in any other
manner such as providing his case file to motion counsel.  When motion counsel sent an e-mail message to
trial counsel after the defendant's motion was denied, again requesting trial
counsel's assistance in documenting what advice trial counsel had provided at
the time of his trial, trial counsel replied that he would not assist motion
counsel.  After motion counsel advised
trial counsel that it was important for trial counsel to "satisfy [his]
professional obligations by cooperating in this [motion for a new trial]
process," trial counsel responded as follows:
"I can tell
you that my policy at that time was to tell clients that if they were charged
with a drug crime, a crime of violence, or a crime involving moral turpitude,
they would more likely than not be deported, denied readmission to the country,
or denial of citizenship.  I advised this
client of that fact in this case."
In contrast, the
defendant averred,
"My lawyer
never told me anything about this case being a problem for my immigration
status or immigration consequences related to my case.  I would remember because this was important
to me. . . .  The lawyer could
have negotiated a better deal if he knew the immigration consequences.  I would have asked my attorney to get a plea
deal that did not stop me from getting my green card.  I would rather have plead to something that
allowed me to get a visa later than risk a trial."
      In his e-mail messages, trial counsel also
informed motion counsel that "plea recommendations were discussed"
during his meetings with multiple assistant district attorneys who handled the
case.  However, trial counsel did not
state whether he relayed any of the plea discussion information to the defendant.  Finally, trial counsel refused to provide his
notes or his "work product" from this case to motion counsel.[1]
      Discussion.  "A judge 'may grant a new trial at any
time if it appears that justice may not have been done.'  The judge must make 'such findings of fact as
are necessary to resolve the defendant's allegations of error of
law.'"  Commonwealth v. Grace, 397
Mass. 303, 305 (1986), quoting Mass. R. Crim. P. 30 (b), as
appearing in 435 Mass. 1501 (2001). 
Because the motion judge was not the trial judge and did not conduct an
evidentiary hearing, we review the motion judge's decision to not grant an
evidentiary hearing de novo, granting no special deference to their
conclusion.  See Commonwealth v. Bastos,
103 Mass. App. Ct. 376, 381–382 (2023). 
In deciding a motion for a new trial, a motion judge must first decide
whether the defendant's motion and affidavits present a "substantial
issue."  Commonwealth v. Lys, 481
Mass. 1, 5 (2018), quoting Mass. R. Crim. P.
30 (c) (3).  "If a motion
judge finds that they do present a substantial issue, then the judge must hold
an evidentiary hearing."  Lys, supra
at 6.
      In determining whether a substantial issue
exists, "a judge considers the seriousness of the issues raised and the
adequacy of the defendant's showing on those issues."  Commonwealth v. Welch, 487 Mass. 425, 445
(2021).  Given that a claim of
ineffective assistance of counsel "readily qualifies as a serious issue,"
the remaining question here is the adequacy of the defendant's showing.  Commonwealth v. Denis, 442 Mass. 617, 629
(2004).  Regarding the adequacy of the
defendant's showing, "the defendant's submissions 'need not prove the
[motion's] factual premise . . . but they must contain sufficient
credible information to cast doubt on the issue.'"  Welch, supra, quoting Commonwealth v. Upton,
484 Mass. 155, 162 (2020).  A factor
relevant to a judge's determination whether to hold an evidentiary hearing is
if "a hearing would have provided the judge with additional
information relevant to the motion." 
Commonwealth. v. DeVincent, 421 Mass. 64, 68 (1995).
      In Padilla v. Kentucky, the United States
Supreme Court concluded that defense counsel's failure to advise a client that
a clear consequence of his guilty plea would be presumptively mandatory deportation
constituted ineffective assistance of counsel. 
559 U.S. 356, 369-374 (2010). 
When determining whether counsel has been constitutionally ineffective
in providing advice concerning immigration consequences consistent with
Padilla, the question is "whether there has been serious incompetency,
inefficiency, or inattention of counsel -- behavior of counsel falling
measurably below that which might be expected from an ordinary fallible lawyer
-- and, if that is found, then, typically, whether it has likely deprived the
defendant of an otherwise available, substantial ground of defence."  Clarke, 460 Mass. at 45, quoting Saferian,
366 Mass. at 96.
      1. 
Trial counsel's performance. 
"It is quintessentially the duty of counsel to provide her client
with available advice about an issue like deportation and the failure to do so
'clearly satisfies the first prong of the Strickland analysis.'"[2]  Clarke, 460 Mass. at 43, quoting Padilla, 559
U.S. at 371.  The defendant argues that
trial counsel, by "communicating that deportation and inadmissibility were
probabilistic consequences of a conviction," failed to properly warn the
defendant, a noncitizen, of a conviction's near-certain adverse immigration
consequences, including being rendered for mandatory deportation and the loss
of discretionary relief from removal.[3] 
The Commonwealth counters that ordinary fallible counsel was not
required to provide any advice to the defendant 
concerning adverse immigration consequences of a criminal conviction,
including deportation, inadmissibility, or the loss of access to discretionary
relief.
      In order to comply with Padilla and its
progeny, the ordinary fallible criminal defense attorney must first make a
reasonable inquiry of their client's history, including whether the client is a
citizen of the United States.  See
Commonwealth v. Lavrinenko, 473 Mass. 42, 51-52 (2015); Clarke, 460 Mass. at 46
("fail[ing] to ascertain that the defendant was not a United States
citizen may be sufficient to satisfy the first prong of the Saferian
standard").  "Where a criminal
defense attorney learns that his or her client is a noncitizen, the attorney
must make further reasonable inquiry of the client to determine, where
possible, the client's immigration status."  Lavrinenko, supra at 52.
      Once counsel has determined their noncitizen
client's circumstances, they are required to advise their client for each
charge that either pleading guilty or going to trial may carry a risk of
adverse immigration consequences.  See
Marinho, 464 Mass. at 124-126.  When the
immigration consequences of a conviction are clear, counsel has the duty to
give correct advice concerning those consequences.  See Commonwealth v. DeJesus, 468 Mass. 174,
180 (2014), citing Padilla, 559 U.S. at 369; Commonwealth v. Gordon, 82 Mass.
App. Ct. 389, 396 (2012), citing Padilla, supra.
      In Massachusetts, an attorney's
obligations to advise criminal defendants of immigration consequences as set
forth in Padilla were applicable well before the defendant was convicted in
2000.  See Commonwealth v. Sylvain, 466
Mass. 422, 424 (2013) (Supreme Judicial Court concluding, "Sixth Amendment
[to the United States Constitution] right enunciated in Padilla was not a 'new'
rule and, consequently, defendants whose State law convictions were final after
April 1, 1997, may attack their convictions collaterally on Padilla
grounds").
      Here, the defendant's trial counsel failed
to provide constitutionally effective assistance as he did not sufficiently
advise the defendant on how resolution of his criminal charges would impact his
ability to remain in the United States. 
See Commonwealth v. Taron T., 104 Mass. App. Ct. 219, 226 (2024).  Had trial counsel adequately inquired of the
defendant's immigration status, he would have learned that the defendant was a
noncitizen and that while temporarily inadmissible and subject to removal from
the United States, the defendant's status did not prohibit a future application
for either naturalization or other legal status such as lawful permanent
residence.  On basic inquiry, trial
counsel would have also learned that the defendant desired to stay in the
United States to be with his family and was fearful of returning to the
violence he encountered in his home country.
      Given these circumstances, trial counsel
should have, but failed to, advise the defendant on his deportation risk if
convicted of the charges.  Trial
counsel's proffered advice concerning the defendant's deportation risk --
specifically, that the defendant would "more likely than not be deported"
-- was inadequate given that it failed to convey that a conviction would leave
the defendant with "virtually no avenue for relief from deportation,"
DeJesus, 468 Mass. at 181, and also would foreclose his ability to ever
re-enter the United States without being rendered deportable.[4]  See DeJesus, id. at 181-182.  See also Marinho, 464 Mass. at 124-125.  A conviction of either of the crimes of moral
turpitude for which the defendant was charged[5] would render the defendant, at
a minimum, permanently inadmissible, which meant the defendant would not be
allowed to either lawfully remain in or ever re-enter in the United
States.  See 8 U.S.C.
§§ 1182(a)(2)(A)(i)(I), 1227(a)(1)(A). 
Furthermore, the same conviction would effectively bar the defendant's
eligibility for cancellation of removal (including deportation) from the United
States.  See 8 U.S.C.
§ 1229b(b)(1)(C).[6]
      An immigration-safe plea would have
reduced if not eliminated the risk a conviction posed to the defendant and
provided him the opportunity to remain with his family.  See Padilla, 559 U.S. at 368, quoting
Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 323 (2001),
superseded by statute on other grounds ("[p]reserving the client's right
to remain in the United States may be more important to the client than any
potential jail sentence").  Trial
counsel deprived the defendant of this option, however, by failing to advise
the defendant that the Commonwealth appeared open to plea negotiations and thus
depriving the defendant of "the opportunity to make an intelligent
decision, based on greater information, about whether to proceed to trial or to
request that counsel engage in plea negotiations."  Marinho, 464 Mass. at 127.[7]  Accordingly, trial counsel's performance
"fell measurably below" the objective standard of reasonableness as
required by Saferian.  Marinho, supra.
      Although it is undisputed that Padilla
requires counsel to advise their clients of the client's known deportation
risks, 559 U.S. at 374 ("we now hold that counsel must inform her client
whether his plea carries a risk of deportation"), a defense attorney's
obligation to advise criminal defendants on inadmissibility has not been
directly answered by Massachusetts courts. 
See Commonwealth v. Lopez, 96 Mass. App. Ct. 34, 41 n.8 (2019).[8]  Considering the clear and dire risks that a
criminal conviction of a crime of moral turpitude presented to the defendant's
ability to lawfully remain or ever re-enter the United States, I conclude that
Padilla and its progeny, Massachusetts statutory authority, the professional
standards of legal representation of the time, and art. 12 of the Massachusetts
Declaration of Rights required trial counsel to advise the defendant of the
known adverse consequences a conviction would have to his admissibility,
including the foreclosure of discretionary relief.
      First, inadmissibility and deportation are
inextricably connected to the defendant's ability to remain in the United
States.  In fact, Congress has long
recognized that inadmissibility is inherently tied to deportability.  See Vartelas v. Holder, 566 U.S. 257, 262
(2012) ("In [the Illegal Immigration Reform and Immigration Responsibility
Act of 1996], Congress abolished the distinction between exclusion and
deportation procedures and created a uniform proceeding known as
'removal'").[9]  Further, the
Padilla Court's concern of the immigration consequences of a criminal
conviction was not strictly limited to the defendant's deportation risk, but
instead with the "removal consequences" that stem from a qualifying
conviction.  Padilla, 559 U.S. at
373.  As to the removal consequences of
the defendant's convictions, the defendant's permanent inadmissibility is
functionally equivalent to deportation because his ability to ever obtain
either naturalization or other lawful status to remain in the United States was
greatly diminished, if not permanently foreclosed.[10]  See 8 U.S.C. §§ 1182(a)(2)(A)(i)(I),
1429.  Furthermore, his inadmissibility
status meant that he would be subject to mandatory deportation if he ever
attempted to re-enter the United States. 
See 8 U.S.C. § 1227(a)(1)(A).
      The defendant's conviction of a crime of
moral turpitude also serves as a bar to discretionary relief from removal
proceedings.  See 8 U.S.C
§ 1229b(b)(1)(C).  This significant
risk to the defendant's ability to receive discretionary relief from
inadmissibility status, which would otherwise mandate removal, falls squarely
under the adverse immigration consequences that a defense counsel must
adequately advise of under Padilla.  See
Padilla, 559 U.S. at 368, quoting St. Cyr, 533 U.S. at 323 ("'preserving
the possibility of' discretionary relief from deportation . . .
'would have been one of the principal benefits sought by defendants deciding
whether to accept a plea offer or instead to proceed to trial'");
Lavrinenko, 473 Mass. at 62 ("the clear immigration consequence of the
defendant's plea . . . was the substantial risk that he would lose a
viable opportunity for discretionary relief"); DeJesus, 468 Mass. at 182.
      In addition, a conviction of a crime of
moral turpitude would very likely increase the defendant's chance of being
deported, given the long-standing Federal public policy of prioritizing the
deportation of those with criminal convictions.[11]  Being inadmissible essentially placed the
defendant in permanent unlawful-status limbo, rendering him more vulnerable to
an order of deportation and limited avenues of discretionary relief.  See Padilla, 559 U.S. at 363–364 ("Under
contemporary law, if a noncitizen has committed a removable offense after the
1996 effective date of these amendments [to the Immigration and Nationality
Act], his removal is practically inevitable but for the possible exercise of
limited remnants of equitable discretion vested in the Attorney General to
cancel removal for noncitizens convicted of particular classes of
offenses").
      The above issues are the types of grave
immigration consequences that are "like deportation," of which
counsel must advise criminal defendants. 
Padilla, 559 U.S. at 371.  It
would be inconsistent with Padilla and its progeny to conclude that counsel has
an obligation to advise a defendant only that they may be subject to
deportation, which is part of the removal process, while declaring that counsel
has no obligation to advise the defendant that the same criminal conviction
would also (1) render the defendant permanently inadmissible and
presumptively lead to his removal, (2) completely bar potential defenses
or discretionary relief to the very same removal or deportation action, and
(3) deny the defendant the chance to ever lawfully reenter the United
States.  See id. at 370 ("When
attorneys know that their clients face possible exile from this country and
separation from their families, they should not be encouraged to say nothing at
all").  Instead, Massachusetts law
holds that counsel must advise their clients about immigration consequences
associated with a criminal conviction, "however imposed."[12]  Marinho, 464 Mass. at 125.  Cf. Lopez, 96 Mass. App. Ct. at 39 n.8 (2019)
("as the Commonwealth acknowledges, in some circumstances . . .
it may constitute ineffective assistance not to warn about the specific
inadmissibility consequences of a guilty plea").  Here, the impact of the clear, mandatory, and
dire immigration consequences of a conviction of a crime of moral turpitude as
related to the defendant's inadmissibility status was tantamount to making him
presumptively deportable.  Thus, trial
counsel was obligated to advise the defendant on the inadmissibility
consequences as set forth above.
      Furthermore, contrary to the court's
assertion that this dissent represents a post hoc view as to trial counsel's
obligations, ante at        , the
Massachusetts Legislature mandated, well before Padilla, that criminal defendants
should be informed of the adverse immigration consequences attendant to a
criminal conviction beyond the threat of deportation.  At the time the defendant's case was
resolved, G. L. c. 278, § 29D, required judges conducting plea
colloquies to advise criminal defendants that "conviction of the offense
for which you have been charged may have the consequences of deportation,
exclusion from admission to the United States, or denial of naturalization,
pursuant to the laws of the United States" (emphasis added).  G. L. c. 278, § 29D, as
amended by St. 1996, c. 450, § 254 (effective December 27, 1996).[13]  Because this required warning is intended to
supplement counsel's advice to a defendant, rather than replace it, G. L.
c. 278, § 29D, is properly viewed as setting a minimum standard of
advice.  See Clarke, 460 Mass. at 48 n.20
("[T]he receipt of such [G. L. c. 278, § 29D,] warnings is
not an adequate substitute for defense counsel's professional obligation to
advise [his or] her client of the likelihood of specific and dire immigration
consequences that might arise from such a plea").  See also Padilla, 559 U.S. at 374 n.15
("[W]e find it significant [in assessing counsel's obligation to warn of
risk of deportation] that the plea form currently used in Kentucky courts
provides notice of possible immigration consequences. . . .  Further, many States require trial courts to
advise defendants of possible immigration consequences" [citing to
numerous State statutes including G. L. c. 278, § 29D]).  As deportation, exclusion from admission to
the United States, and denial of naturalization are listed together in
G. L. c. 278, § 29D, as immigration consequences, it would be
inconsistent with the requirement of advising a client on immigration
consequences to conclude that counsel would solely have an obligation to advise
their clients as to deportation.  See
Marinho, 464 Mass. at 125.
      In addition to the minimum standard of
advice set forth in plea colloquies, professional standards in Massachusetts at
the time also required attorneys to advise their clients on adverse immigration
consequences extending beyond deportation. 
See Clarke, 460 Mass. at 42, quoting Padilla, 559 U.S. at 357
(constitutionally deficient representation is "necessarily linked to the
practice and expectations of the legal community").  "[S]ince 1988, [the Committee for Public
Counsel Services (CPCS)] has required all staff attorneys and bar advocates in
Massachusetts to advise a defendant client of the immigration consequences of
his or her criminal case" (emphasis added).  Clarke, supra at 43 n.15.  Trial counsel's proffered standard,
immigration-consequence advice shows his acknowledgment that he was obligated
to warn the defendant of inadmissibility risks stemming from a conviction.  Furthermore, the record shows that trial
counsel acknowledged to motion counsel that at the time of the defendant's
convictions, trial counsel's point of contact or supervisor from the bar
advocate program "was insistent that [criminal defense attorneys] provided
the immigration warning [G. L. c. 278, § 29D,] to assigned
clients."
      Although the Supreme Judicial Court has
not yet directly addressed whether inadmissibility consequences are required
under Padilla, I note that the highest State courts in both Arizona and Iowa have
concluded that Padilla requires counsel to advise similarly situated defendants
on certain inadmissibility consequences. 
See State v. Nunez-Diaz, 444 P.3d 250, 255 (Ariz. 2019) (concluding
counsel provided ineffective assistance of counsel under Padilla by failing to
advise noncitizen client of consequences from guilty plea of being permanently
barred from reentry into United States and losing eligibility for cancellation
of removal); Diaz v. State, 896 N.W.2d 723, 729-732 (Iowa 2017) (counsel obligated
under Padilla to inform clients of adverse inadmissibility consequences
including foreclosure of cancellation of removal proceeding and permanent bar
on legal reentry).  But see Rosario v.
State, 165 So. 3d 672, 673 (Fla. Dist. Ct. App. 2015) ("Beyond advising of
the risk of deportation as required by Padilla, counsel had no affirmative duty
to provide advice about other possible immigration ramifications of the plea,
such as whether the plea might negatively impact [appellant's] ability to
obtain an adjustment in status, a waiver of inadmissibility, or cancellation of
removal"); Garcia v. State, 425 S.W.3d 248, 260 (Tenn. 2013)
("Padilla neither mandates, nor even suggests, that defense counsel in a
state criminal trial must be able to advise her client of the effect a guilty
plea is likely to have upon the client's future eligibility to immigrate
legally to the United States").
      Even assuming arguendo that Padilla holds
that the Sixth Amendment does not require counsel to advise noncitizen clients
of inadmissibility risks, this court should not strive to hew to the minimum
United States constitutional protection required.  The Supreme Judicial Court has long
recognized that art. 12 guarantees a defendant's right to counsel independent
from the Sixth Amendment.  See
Commonwealth v. Dew, 492 Mass. 254, 261 n.17 (2023), quoting Commonwealth v.
Hodge, 386 Mass. 165, 169 (1982) ("We have often noted that art. 12
provides 'greater safeguards' than those provided by the Sixth
Amendment").  Consistent with our
precedent, this court should conclude that a defendant's right to advice as to
the immigration consequences of their conviction must include the defendant's
potential inadmissibility status considering, as set forth above, both trial
counsel's obligations and the enormity of the consequence to the
defendant.  See Lavrinenko, 473 Mass. at
63 n.25 ("We need not determine whether [a counsel's obligation to advise
a defendant on the substantial risk of losing a viable opportunity for
discretionary relief] is dictated by Federal constitutional law; it is
sufficient that it is dictated by art. 12 of the Massachusetts Declaration of
Rights").  See also Sylvain, 466
Mass. at 436 ("art. 12 demands that defense counsel provide defendants
with accurate advice concerning the deportation consequences of a guilty plea
or conviction at trial").
      Here, the defendant's trial counsel
informed motion counsel, through an e-mail message, that his "policy at
the time was to tell clients that if they were charged with a drug crime, a
crime of violence, or a crime involving moral turpitude, they would more likely
than not be deported, denied readmission to the country, or denial of
citizenship.  [He] advised this client
[the defendant] of that fact in this case."  This advice was insufficient.  As the crimes the defendant was charged with
would both clearly and directly result in the defendant being rendered
inadmissible if convicted, and thus cut off avenues of permanent residency and
most forms of discretionary relief from removal, the defendant's trial
counsel's performance fell measurably below that which might be expected from
an ordinary fallible lawyer.[14]  See
Padilla, 559 U.S. at 369; Lavrinenko, 473 Mass. at 62.  The issue here is not whether trial counsel
was aware of his obligations to advise his clients of immigration consequences,
as the standards of the time and his very admissions show that he was
aware.  Rather, trial counsel's deficient
performance stemmed from his rote, one-size-fits-all immigration warning, and
his failure to review the relevant deportation and removal statutes in order to
provide complete and accurate advice to the defendant.  See Padilla, 559 U.S. at 369.
      Hence, as trial counsel's advice as to the
immigration consequences of the defendant's conviction was deficient, the
defendant satisfied the first prong of Saferian.
      2. 
Prejudice.  The court concludes
that even if trial counsel's advice to the defendant was deficient, the
defendant failed to demonstrate that he suffered prejudice from counsel's performance.  Ante at
       . 
I depart from the court's decision by concluding that the defendant
raised a substantial issue warranting an evidentiary hearing as to whether he
suffered prejudice due to trial counsel's ineffective performance.
      When a defendant who was convicted at
trial seeks to establish prejudice because of their counsel's insufficient
performance, they "must show a reasonable probability that the result of a
plea would have been more favorable than the outcome of the trial."  Marinho, 464 Mass. at 129.  Specifically, "the defendant must
demonstrate a reasonable probability that the prosecution would have made an
offer, that the defendant would have accepted it, and that the court would have
approved it."  Id.
      Here, in assessing the adequacy of the
defendant's showing on prejudice, it is first important to acknowledge that the
defendant's trial counsel refused to cooperate with the defendant's motion for
a new trial, thereby hampering the defendant's ability to make a showing of
prejudice on the papers.[15]  Trial
counsel's refusal to cooperate was detrimental to the defendant because trial
counsel's e-mail messages indicate that had he provided an affidavit, it may
have been beneficial to the defendant. 
In particular, an affidavit from trial counsel may have established
factors including:  whether counsel was
aware the defendant was not a citizen; whether counsel had plea discussions
with the Commonwealth that he did not convey to the defendant; whether counsel
provided his standard immigration warning to the defendant; and whether
counsel's approach in this case was influenced by his mistaken belief that a
sentence of "unsupervised probation of [six] months or less would prevent
the [defendant] from having immigration issues."[16]
      In addition, the absence of an affidavit
from trial counsel resulted in an unjustified adverse inference against the
defendant.  See Commonwealth v. Martinez,
86 Mass. App. Ct. 545, 550-552 (2014) ("Because the motion judge appears
to have based her decision in large part on the defendant's failure to produce
an affidavit from plea counsel, without appearing to consider the circumstances
of that failure, this case must be remanded for an evidentiary
hearing").  Thus, it was error for
the motion judge in this case to base his decision in part on the defendant's
failure to produce an affidavit from his trial counsel.[17]
      Turning to the defendant's claim, I
conclude that the defendant raised a substantial issue as to prejudice:  specifically, whether there is reasonable
probability that the defendant and the Commonwealth would have fashioned an
immigration-safe plea agreement that would have been accepted by the
judge.  Several factors instruct that the
defendant would have sought and obtained an immigration-safe plea.  First, the defendant averred that trial
counsel never told him about a conviction having adverse immigration
consequences, and that he would have pursued an immigration-safe plea agreement
had he known of these risks.  While trial
counsel, in an e-mail message to motion counsel, stated that the defendant did
not express interest in pursuing a plea, the record squarely raises the issue
that the defendant was unaware of the immigration consequences of a
conviction.  As such, the defendant was
deprived of the opportunity to make an intelligent decision whether to go to
trial.  See Marinho, 464 Mass. at 127.
      Had he been properly advised of the
immigration consequences, the defendant has averred substantial reasons to be
motivated to seek a favorable plea, given that his wife and their child lived
in Massachusetts at the time of trial and that he may face violence should he
be returned to his home country.  See
DeJesus, 468 Mass. at 184 (special immigration circumstances included that
defendant "had been in the country since he was eleven years old, his
family was in Boston, and he had maintained steady employment in the Boston
area"); Martinez, 86 Mass. App. Ct. at 552-553 (remand for consideration
of prejudice where defendant was "a United States resident since early
childhood, employed with a family, including a common-law wife and three
children who were all United States citizens").  Because it is unclear whether the judge
credited the defendant's claims, this issue should be explored in an
evidentiary hearing.
      Second, for the defendant to obtain an
immigration-safe plea, the Commonwealth would have had to agree to not proceed
on the crimes involving moral turpitude. 
In assessing whether to attempt to resolve criminal cases short of
trial, prosecutors are encouraged to view the potential immigration
consequences as part of a plea.[18] 
Here, we know from trial counsel's e-mail messages that the Commonwealth
engaged in plea negotiations, although the details of these discussion are
unknown.[19]  The Commonwealth, in
addition to the customary considerations for entering into a plea agreement,
may have considered the immigration consequences of a conviction of the type of
offense that the defendant was charged with as a reason to agree to an
immigration-safe plea in this case.[20] 
In an evidentiary hearing, the defendant may elect to seek to introduce
evidence concerning the Commonwealth's position in this case as well as its
general plea practice at the time.
      Perhaps the most significant factor
supporting the reasonable probability that the defendant would have been able
to secure an immigration-safe plea is the legal environment in which he was
charged.  This court should acknowledge,
from its collective experience and familiarity with the trial court, that it is
not uncommon for assistant district attorneys to agree to plea recommendations
that include charge concessions. 
Acknowledging this practice is part of the broader recognition that the
great majority of criminal cases are resolved through plea negotiations.  See, e.g., Marinho, 464 Mass. at 127
("[p]leas account for nearly [ninety-five percent] of all criminal
convictions" [citation and quotation omitted]).[21]  Furthermore, in Massachusetts, the criminal
justice system is designed, or at least has evolved, to treat first-time
offenders similar to the defendant with leniency by emphasizing factors such as
a defendant's personal circumstances and preservation of a defendant's record
over more punitive consequences.  In fact,
our Legislature long ago enacted a disposition common to the District Court
that allows for a defendant to avoid a guilty conviction by admitting to
sufficient facts.  See G. L.
c. 278, § 18, as amended by St. 1992, c. 379, § 193 (effective
January 13, 1993).[22]  The Supreme
Judicial Court, in Commonwealth v. Duquette, recognized the significant and
mutual benefits of such a disposition to the parties in a criminal case, by
stating,
"We
recognize that the 'continuance without a finding' is a procedure which often
serves the best interests of both the Commonwealth and the defendant.  The benefit to a defendant is obvious:  he may be able to avoid a trial and 'earn' a
dismissal of the indictment or complaint, thereby avoiding the consequences of
having a criminal conviction on his record. 
These advantages would be especially appealing to a first offender or a
defendant whose job security or family situation might be threatened by a
conviction.  The Commonwealth avoids the
more time-consuming process of trial and sentencing.  Statutes or court rules specifically
authorizing practices similar to the continuance without a finding have been
adopted in many jurisdictions.  See
Annot., 4 A.L.R. 4th 147 (1981). It has been suggested that such 'pre-trial
diversion' programs reduce the risk of recidivism for first time offenders,
enable a defendant to preserve his community and family ties, and help reduce
court backlogs.  See A. W. Campbell, Law
of Sentencing § 104 (1978); J. S. Williams, The Law of Sentencing and
Corrections, at 88-90 (1974)" (Emphasis added.)

Commonwealth v.
Duquette, 386 Mass. 834, 843 (1982), superseded by G. L. c. 278,
§ 18, as amended by St. 1992, c. 379, § 193.  See Commonwealth v. Rotonda, 434 Mass. 211,
216 (2001) ("Continuances without a finding and admissions to sufficient
facts have long been part of the District Court practice").  In assessing the adequacy of the defendant's
showing that an immigration-safe plea was reasonably probable had trial counsel
performed effectively, we should not ignore the reality that pleas that involve
leniency for first-time offenders are a part of the fabric of the District
Court.[23]
      Here, both the number and nature of the
charges allowed for flexibility for the parties to arrive at an
immigration-safe plea that would benefit both parties.[24]  For instance, both charges against the
defendant of crimes of moral turpitude included lesser included offenses to
which the defendant could have entered into an immigration-safe plea.[25]  Thus, the parties could have agreed to a
combination of charged offenses to arrive at a plea proposal that would not
have jeopardized the defendant's ability to remain in the United States.  See Clarke, 460 Mass. at 48 n.18
("Prejudice may be shown in some cases by establishing that had the
defendant and counsel properly understood and considered the deportation
consequences of guilty pleas to some charges, counsel likely would have been
able to negotiate a plea to other charges that would not have carried such a
consequence").  Such a result
depended on competent counsel.  See
Missouri v. Frye, 566 U.S. 134, 144 (2012) ("In order that these benefits
[to both parties entering into a plea agreement] can be realized, however,
criminal defendants require effective counsel during plea negotiations").
      Third, the defendant made a sufficient
showing to require a hearing as to whether there was a reasonable probability a
judge would have approved an immigration-safe plea.  A judge presiding over a plea would have
considered dispositional goals and the nature of the criminal offenses when
fashioning a sentence for a first-time offender like the defendant.[26]  Here, it is notable that the trial judge
sentenced the defendant to unsupervised probation for a term of six months as
contrasted with a lengthier period of supervised probation or even
incarceration.  Cf. Gordon, 82 Mass. App.
Ct. at 401 ("we conclude that a plea bargain for a sentence of less than
one year on the [assault and battery on a police officer], with different
deportation consequences as a matter of law, may have been a reasonable
probability given the over-all sentence [the defendant] received, and so it may
have been rational for him to reject the one-year sentence on the [assault and
battery on a police officer]").
      Thus, I conclude that when considering
whether the defendant met his burden to establish a substantial issue of
prejudice, neither the nature nor likelihood of an immigration-safe resolution
in this case represent the fruits of a "sophisticated" plea, ante at
       , of which there was no reasonable
probability of obtaining, but rather present the basis for a routine
disposition entered in our busy criminal courts on a regular if not daily
basis.
      Finally, I disagree with the court that
this case is nearly identical to Marinho. 
Ante at        .  See 464 Mass. at 115-133.  The court in Marinho addressed fundamentally
different circumstances that supported its conclusion that the defendant in
Marinho was not prejudiced by counsel's ineffective performance.  See id. at 133.  First, in Marinho, trial counsel cooperated
and provided an affidavit for the defendant's motion for a new trial.  See id. at 128-129.  The prosecutor and counsel for the
codefendant in Marinho also submitted affidavits, and there was agreement
between counsel that trial counsel for Marinho refused to engage in plea
negotiations.  See id. at 123 n.10,
128-129.  Thus, it was undisputed that
defense counsel refused to engage in plea negotiations with the prosecutor and
failed to discuss that option with the defendant.  Id. at 127-130.
      In contrast, trial counsel in this case
admitted in postmotion correspondence with motion counsel by e-mail messages,
filed with the defendant's motion for reconsideration, that "plea
recommendations were discussed."[27] 
Having demonstrated that plea discussions occurred, the defendant is
entitled to an evidentiary hearing to examine whether the substance of these
plea negotiations were favorable to the defendant's immigration status or
whether trial counsel ever informed the defendant of these plea discussions.  See Gordon, 82 Mass. App. Ct. at 401;
Martinez, 81 Mass. App. Ct. at 600.
      Furthermore, trial counsel's affidavits in
Marinho did "not establish that 'better work might have accomplished
something material for the defense.'" 
464 Mass. at 129, quoting Commonwealth v. Dargon, 457 Mass. 387, 403
(2010).  That is because the court in
Marinho found that even if the defendant had successfully pleaded guilty to a
lesser charge as proffered by motion counsel, the defendant may have faced the
same adverse immigration consequences triggered by the original charge.  See Marinho, supra at 131-132 ("even if
the prosecutor had offered a plea to simple assault . . . the
defendant well may have faced the same immigration consequence").  In addition, there was no evidence that
Marinho's conviction factored into his removal. 
Id. at 130-131.
      By contrast, at the time of his appeal,
the defendant in this case was still in the United States and was not facing a
removal action.  Instead, the defendant
sought a "green card," and his immigration counsel advised him that
the conviction at issue in this appeal foreclosed such relief.  Thus, the prejudice that stems from the
defendant's conviction is not predicated on an event that had already occurred
with no evident causal connection, such as the deportation in Marinho.  Instead, the defendant averred that he is
adversely impacted by his inadmissibility status, due to his conviction, which
has foreclosed his ability to seek permanent resident status and affirmative
relief in any potential future removal action.
      Of course, the defendant's burden on a
motion for a new trial is not to establish actual prejudice to his immigration
status; rather it is to establish "a reasonable probability that the
result of a plea would have been more favorable than the outcome of the
trial."  Marinho, 464 Mass. at
129.  The defendant here made a
substantial showing of the potential for an immigration-safe plea to require an
evidentiary hearing, and thus, a remand is necessary.  See Gordon, 82 Mass. App. Ct. at 401-402;
Martinez, 81 Mass. App. Ct. at 596, 600.
      Conclusion.  "It is difficult to overstate the
essential importance of the right to counsel in our adversary system of
criminal justice.  See United States v.
Cronic, 466 U.S. 648, 653 (1984) (accused person's right to counsel 'is a
fundamental component of our criminal justice system')."  Dew, 492 Mass. at 261.  "The procedural and substantive
safeguards that define our criminal justice system and are designed to assure
that the accused receives fair proceedings and a fair trial largely would be
for naught if the accused were left to fend for him- or herself without the
assistance of counsel to navigate and exercise his or her rights."  Id., citing Gideon v. Wainwright, 372 U.S.
335, 344-345 (1963).  Here, trial counsel
failed to meet the prescribed safeguards, and as a result of this failure, the
defendant navigated his criminal charges under a mistaken premise and was thus
deprived of an accessible and fair criminal proceeding.  Because the defendant has demonstrated,
first, that his trial counsel's performance was constitutionally deficient;
and, second, that substantial issues exist concerning whether there is a
reasonable probability that he would have received a more favorable disposition
but for trial counsel's deficient performance, this matter should be remanded
for an evidentiary hearing as to this additional issue.  Such an evidentiary hearing is required to
ensure that this court abides by its "responsibility under the
Constitution to ensure that no criminal defendant -- whether a citizen or not
-- is left to the 'mercies of incompetent counsel.'"  Padilla, 559 U.S. at 374, quoting McMann v.
Richardson, 397 U.S. 759, 771 (1970).
Respectfully, I
dissent.

footnotes

[1] The defendant
attempted to obtain an affidavit from trial counsel, who refused.  It appears that trial counsel also refused to
turn over his notes relating to his representation of the defendant,
notwithstanding the applicable Rule of Professional Conduct.  See Mass. R. Prof. C. 1.15A, as amended, 493
Mass. 1303 (2024).

[2] The parties
seem to agree, and we assume without deciding, that the breaking and entering
and malicious destruction of property charges that the defendant faced
constituted crimes of moral turpitude under the immigration laws and
accordingly carry negative immigration consequences.  See 8 U.S.C. § 1227(a)(2)(A)(i)(II), as
amended through September 30, 1996; Da Silva Neto v. Holder, 680 F.3d 25, 27
(1st Cir. 2012); Wala v. Mukasey, 511 F.3d 102, 106 (2nd Cir. 2007).
      Generally speaking, two such consequences
are deportation and inadmissibility to the United States.  See 8 U.S.C. §§ 1182(a)(2)(A)(i), as
amended through December 3, 1999, 1227(a)(2)(A)(i).  The defendant alleges that had he pleaded
guilty to certain lesser included offenses, he would have fallen within
exceptions to both the deportation and admissibility provisions.

[3] The defendant
also makes the conclusory assertion that his conviction in 2000 rendered him ineligible
for discretionary relief from deportation (as opposed to inadmissibility).  However, in his brief the defendant did not
identify any program for discretionary relief from deportation that he would be
eligible for, but for his conviction.
      In a postargument letter, the defendant
references one such program:  that,
allegedly, having affirmatively sought asylum, he could request asylum as a
defense against removal.  This argument
was not made to the motion judge, however, nor was it made in the briefs on
appeal.  See Commonwealth v. Graziano, 96
Mass. App. Ct. 601, 607 n.10 (2019) (argument "not raised in the trial
court or in the defendant's appellate brief . . . is waived").

[4] The dissent
contends that defense counsel failed to meet what the dissent asserts were
"the professional standards of legal representation of the
time."  Post at
       . 
The dissent echoes the defendant's argument that defense counsel was
required as a matter of law to advise the defendant not only that certain
convictions would likely render him deportable (although, he was already
deportable), but also that the convictions would render the defendant
"inadmissible" in the future. 
The dissent also adopts the defendant's argument that defense counsel was
required to construct a possible plea bargain that would have no immigration
consequences, and to advise the defendant of such a plea.  Post at
       .
      The principal problem with the dissent's
exegesis is that it finds no support in the record.  The law that occupies the dissent is
immigration law, not criminal law; immigration law is complicated, and it is
not the principal discipline of a criminal defense lawyer -- certainly not in
the year 2000.  The motion for a new
trial did not include an expert report regarding a defense lawyer's
professional standards at the time, nor is there case law that addresses, as of
that time period, the particular requirements for immigration advice that the
dissent now seeks to create (i.e., the purported obligation to construct an
"immigration-safe" plea for an undocumented immigrant).  The dissent is instead engaged in a post hoc
effort to impose its views of what counsel should have done, as well as its post
hoc views of the plea bargains to which a prosecutor might have agreed.  It is hindsight reasoning, unsupported by
record facts.
      When we address motions such as this,
claiming ineffective assistance of counsel with respect to advice given over
twenty years before, we should bear in mind that the ultimate question is
whether a particular lawyer fell "measurably below" professional
standards.  The defendant has the burden
to provide record facts showing ineffectiveness at that time, and prejudice at
that time.  The defendant did not do so here.  See Commonwealth v. Drew, 447 Mass. 635, 641
(2006), cert. denied, 550 U.S. 943 (2007) (counsel's performance must be
evaluated "at the time of the alleged professional negligence, and not
with the advantage of hindsight"). 
See also Strickland v. Washington, 466 U.S. 668, 689 (1984) ("A
fair assessment of attorney performance requires that every effort be made to
eliminate the distorting effects of hindsight, to reconstruct the circumstances
of counsel's challenged conduct, and to evaluate the conduct from counsel's
perspective at the time").

[5] The dissent
attempts to distinguish Marinho, pointing out (1) that in Marinho, trial
counsel cooperated with the motion for a new trial, see Marinho, 464 Mass. at
128-129, and (2) that the Marinho court concluded that even if the
defendant had pleaded guilty to simple assault rather than assault and battery
causing serious bodily injury, he might have suffered the same immigration
consequence of deportation, see id. at 131-132. 
Post at        .  Neither point is a material distinction.  Defense counsel in Marinho did not provide
better advice than counsel here, such that prejudice would have been less likely:  counsel in Marinho gave no advice on
immigration consequences and did not discuss potential plea bargains with the
defendant; yet despite counsel's ineffective assistance, the court found no
prejudice.  See 464 Mass. at 122-123,
128.  Moreover, the thrust of Marinho is
that the defendant was undocumented and thus "deportable per se," and
that the defendant's new trial submissions failed to provide supported,
credible evidence "that there was any real opportunity to avoid the
immigration consequences of a conviction, particularly for an undocumented
person."  Id. at 130.  As in Marinho, the motion here "fails
for lack of proof."  Id. at 123.

footnotes for concurring in part and dissenting in part

[1] The defendant
included the above referenced e-mail messages in his motion to reconsider the
denial of his motion for a new trial.

[2] The Supreme
Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), articulated the
two steps required for establishing ineffective assistance of counsel:
"First, the
defendant must show that counsel's performance was deficient.  This requires showing that counsel made
errors so serious that counsel was not functioning as the 'counsel' guaranteed
the defendant by the Sixth Amendment. 
Second, the defendant must show that the deficient performance
prejudiced the defense."
See Clarke, 460
Mass. at 37 ("satisfying the Saferian standard necessarily satisfies
Strickland").

[3] This dissent
uses the term "noncitizen" as equivalent to the statutory term
"alien," 8 U.S.C. § 1101(a)(3). 
See, e.g., Santos-Zacaria v. Garland, 598 U.S. 411, 414 n.1 (2023).

[4] Title 8
U.S.C. § 1227(a), provides, in pertinent part, "Classes of deportable
aliens.  Any alien (including an alien
crewman) in and admitted to the United States shall, upon the order of the
Attorney General, be removed if the alien is within one or more of the
following classes of deportable aliens: 
. . .  Any alien who at
the time of entry or adjustment of status was within one or more of the classes
of aliens inadmissible by the law existing at such time is deportable."

[5] It is
undisputed that at the time of the defendant's conviction, the defendant's
charges of malicious destruction of property (over $250) and breaking and
entering in the nighttime with intent to commit a felony were crimes of moral
turpitude.  See Matter of R, 5 I. &
N. Dec. 612, 617 (B.I.A. 1954); Matter of M, 2 I. & N. Dec. 721, 723
(B.I.A. 1946).

[6] Title 8
U.S.C. § 1229b(b) provides, in pertinent part, "The Attorney General
may cancel removal of, and adjust to the status of an alien lawfully admitted
for permanent residence, an alien who is inadmissible or deportable from the
United States if the alien [(C)] has not been convicted of an offense under
section 1182(a)(2) [or] 1227(a)(2) [including crime of moral turpitude]
. . ." (emphasis added).

[7] The ordinary
fallible attorney here was obligated to be aware that a conviction of the
lesser included offenses of the crimes of moral turpitude or the assault and
battery for which the defendant was charged would not subject him to the same
adverse immigration consequences.  See,
e.g., Marinho, 464 Mass. at 127, citing Committee for Public Counsel Services,
Assigned Counsel Manual c. 4, at 46 (rev. June 2011) (CPCS Manual) ("It is
standard practice that 'the attorney should explore all alternatives to
trial, including the possible resolution of the case through a negotiated plea
or admission to sufficient facts'").

[8] It is
necessary to address the inadmissibility issue as it applied to the defendant,
because, as discussed below, the defendant presented sufficient evidence on
both prongs of the Saferian test based on trial counsel's failure to provide
correct advice on the inadmissibility consequences triggered by his conviction
to warrant an evidentiary hearing.

[9] In 1996, the
word "excludable" was replaced with "inadmissible" in the
Immigration and Nationality Act.  See
Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L.
No. 104-208, 110 Stat. 3009-546, § 308. 
"Despite the change in terminology, the terms 'exclusion' and
'inadmissibility' are functionally equivalent."  5 C. Gordon, S. Mailman, S. Yale-Loehr, &
R. Wada, Immigration Law and Procedure, § 63.01[2] (rev. ed. 2025).  See Vartelas, 566 U.S. at 262.

[10] A person may
seek a discretionary waiver of inadmissibility due to a crime of moral
turpitude under 8 U.S.C. § 1182(h). 
However, such a waiver is available only if the person establishes that
their inadmissibility status would cause "extreme hardship" to a
member of their intermediate family, who must also be either a lawful permanent
resident or United States citizen, or if fifteen years have passed since the
date of the defendant's conviction.  Id.

[11] Deporting
"criminal aliens" was a priority of President Clinton Administration
in the 1990s.  See President William J.
Clinton, 1995 State of the Union Address (Jan. 24, 1995) ("That's why our
administration has moved aggressively to secure our borders more by
. . . deporting twice as many criminal aliens as ever before
. . ."); Illegal Immigration Reform and Immigrant Responsibility
Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, §§ 308, 321, 671
(expanding definition of aggravated felony and requiring expediated removal
procedures for those convicted of aggravated felony).  See also The New York Times, Campaigns:  White House 2000, Immigration Policy
Positions, N.Y. TIMES (Oct. 9, 2000),
https://archive.nytimes.com/www.nytimes.com/library/politics/camp/whouse/policy-immigration.html
[https://perma.cc/GDY4-RWWW] ("In 1996, Congress passed the Illegal
Immigration Reform and Immigrant Responsibility Act and the Anti-terrorism and
Effective Death Penalty Act.  The law --
the first major overhaul of America's immigration laws in [thirty] years -- calls
for the deportation of any noncitizen convicted of a felony, regardless of when
the crime was committed or any other mitigating circumstances").  Recent legislation has continued this
trend.  See Laken Riley Act, Pub. L. No.
119-1, 119th Cong. § 1 (2025) (expanding categories of crimes that require
mandatory detention by United States Department of Homeland Security).

[12] The Marinho
court cited as persuasive authority the Committee for Public Counsel Services
(CPCS), Assigned Counsel Manual.  See
Marinho, 464 Mass. at 125–126, citing CPCS Manual c. 4, at 15 (rev. June 2011)
("Counsel must also advise the client . . . of the consequences
of a conviction, including . . . possible immigration consequences
including but not limited to deportation, denial of naturalization or refusal of
reentry into the United States").

[13] The majority
argues that even considering such advice as necessary would be
"farfetched" at the time of the defendant's conviction.  Ante at
       . 
However, the relevant language in G. L. c. 278, § 29D,
pertaining to inadmissibility has existed since 1978, more than twenty years
before the defendant's conviction.  See
G. L. c. 278, § 29D, inserted by St. 1978, c. 383.

[14] The
Commonwealth agrees that, assuming arguendo that advice regarding the
"inadmissibility risks" of a conviction was required, trial counsel's
"general advice" that the defendant would "more likely than
not" be inadmissible was insufficient under Padilla.

[15] Motion
counsel stated that he was prepared to compel trial counsel to testify pursuant
to a subpoena if the judge had granted an evidentiary hearing.

[16] Trial
counsel had informed motion counsel that "[a]t that time [that he
represented the defendant], there was a popular theory among immigration
lawyers that an unsupervised probation of [six] months or less would prevent
the client from having immigration issues."

[17] The motion
judge denied the defendant's motion for a new trial with a margin order that
cited the "reasons advanced by the Commonwealth."  Regarding the defendant's claim of
ineffective assistance of counsel, the Commonwealth opposed on four
grounds.  First, the Commonwealth noted
the lack of an affidavit from trial counsel and that the defendant's affidavit
was "self-serving."  Second,
the Commonwealth argued that there was no indication that the defendant was
deprived of a fair trial.  The defendant,
however, did not argue he was deprived of a fair trial; rather he argued that
he would have sought an immigration-safe plea. 
Third, the Commonwealth argued that the defendant failed to produce
evidence that the defendant and his trial counsel did not engage in plea
negotiations.  Fourth, the Commonwealth
argued that counsel was not ineffective for not "hav[ing] the charges
amended" because that decision rested with the Commonwealth.

[18] As Justice
Duffly noted, concurring in part and dissenting in part in Marinho,
"The
President of the National District Attorneys Association has urged prosecutors
to consider the immigration consequences of a defendant's conviction 'if we are
to see that justice is done.' 
Prosecutors have a duty to do justice, not to win cases.  Commonwealth v. Shelley, 374 Mass. 466, 472
(1978), quoting Berger v. United States, 295 U.S. 78, 88 (1935) ('the prosecuting
attorney "is the representative not of an ordinary party to a controversy,
but of a sovereignty whose obligation to govern impartially is as compelling as
its obligation to govern at all; and whose interest, therefore, in a criminal
prosecution is not that it shall win a case, but that justice shall be
done"')" (Citation omitted.)
464 Mass. at 139
n.7.

[19] If remanded
for a hearing, the defendant would have the burden of establishing the nature
of the plea discussions.  The prosecutors
could be requested to offer their respective memories and perspectives to not
only the plea negotiations but to the district attorney's office's policies and
practices for resolving cases for first-time offenders.  One former prosecutor, as identified in one
of trial counsel's e-mail messages to motion counsel, is presently a District
Court judge.  It is unclear whether
motion counsel efforted to contact an assistant district attorney or other
attorney who was involved in this case or had knowledge of the practices of the
district attorney's office and the District Court at the time of the
defendant's conviction.  While this
information would have been helpful in casting light on pertinent issues, the
absence of such is not fatal to the defendant's motion due to the attendant
circumstances.

[20] As the
Padilla Court noted,  
"informed
consideration of possible deportation can only benefit both the State and
noncitizen defendants during the plea-bargaining process.  By bringing deportation consequences into
this process, the defense and prosecution may well be able to reach agreements
that better satisfy the interests of both parties.  As in this case, a criminal episode may
provide the basis for multiple charges, of which only a subset mandate
deportation following conviction. 
Counsel who possess the most rudimentary understanding of the
deportation consequences of a particular criminal offense may be able to plea
bargain creatively with the prosecutor in order to craft a conviction and sentence
that reduce the likelihood of deportation, as by avoiding a conviction for an
offense that automatically triggers the removal consequence.  At the same time, the threat of deportation
may provide the defendant with a powerful incentive to plead guilty to an
offense that does not mandate that penalty in exchange for a dismissal of a
charge that does."
Padilla, 559 U.S.
at 373.

[21] See Missouri
v. Frye, 566 U.S. 134, 143–144 (2012), quoting Lafler v. Cooper, 566 U.S. 156,
170 (2012) ("The reality is that plea bargains have become so central to
the administration of the criminal justice system that defense counsel have
responsibilities in the plea bargain process, responsibilities that must be met
to render the adequate assistance of counsel that the Sixth Amendment requires
in the criminal process at critical stages. 
Because ours 'is for the most part a system of pleas, not a system of
trials,' it is insufficient simply to point to the guarantee of a fair trial as
a backstop that inoculates any errors in the pretrial process").

[22] See
Commonwealth v. Pyles, 423 Mass. 717, 722 (1996) (providing nonexhaustive list
of statutes that "either permit or mandate analogous [to G. L.
c. 278, § 18,] forms of disposition by means of pretrial
diversion").

[23] Courts are
permitted to take judicial notice of well-known circumstances present in the
Commonwealth's judiciary and the Commonwealth itself.  See, e.g., Moore v. Executive Office of the
Trial Court, 487 Mass. 839, 849 & n.13 (2021) (judicial notice taken of
breadth of trial court); Commonwealth v. Pon, 469 Mass. 296, 315–316 (2014)
("Given the evidence of the long-term collateral consequences of criminal
records, judges may take judicial notice that the existence of a criminal
record, regardless of what it contains, can present barriers to housing and
employment opportunities"); Commonwealth v. De La Cruz, 405 Mass. 269, 277
(1989) (Liacos, J., concurring), abrogated on other grounds by Commonwealth v.
Colon, 482 Mass. 162 (2019) ("I would take judicial notice of the
unfortunate prevalence of prejudice against Hispanics in our
Commonwealth"); Bougas v. Chief of Police of Lexington, 371 Mass. 59, 65
(1976) ("given the congested state of affairs in the Superior Court of the
Commonwealth, a situation of which we take judicial notice"); Commonwealth
v. Jones, 9 Mass. App. Ct. 103, 121 (1980), S.C., 382 Mass. 387 (1981) (Brown,
J., concurring) ("racial prejudice ought to be judicially noticed [in
certain circumstances]").

[24] The portion
of the police report from the incident leading to the charges against the
defendant reflects that two victims accused the defendant and another man of
breaking a car window before running away with a group of men.  At least the codefendant then "hit"
and "struck" the victims.  The
truncated report does not detail that the defendant hit anyone.  He was acquitted of the assault and battery
charge at trial.

[25] The
defendant faced adverse immigration consequences for a conviction of malicious
destruction of property over $250, allowing a sentence of imprisonment for more
than one year, G. L. c. 266, § 127, as amended through St. 1994,
c. 168, § 4 (effective January 25, 1995), but not for the lesser included
offense of malicious destruction of property under $250, for which punishment
of imprisonment cannot be for more than two and one-half months, id.  See 8 U.S.C.
§ 1227(a)(2)(A)(i)(II).  Similarly,
the defendant faced adverse immigration consequences for the charge of breaking
and entering in the nighttime with intent to commit a felony (larceny),
G. L. c. 266, § 16, allowing a sentence of imprisonment for more
than one year, but not for the lesser included offense of breaking and entering
with the intent to commit a misdemeanor, for which punishment of imprisonment
cannot be for more than six months, G. L. c. 266, § 16A.  See 8 U.S.C.
§ 1227(a)(2)(A)(i)(II).  The
Commonwealth agrees that the defendant would not have been rendered
inadmissible had he pleaded guilty to the lesser included offenses and the
assault and battery offense.

[26] See
Commonwealth v. Plasse, 481 Mass. 199, 205 (2019) ("We have long held that
'[a] judge has considerable latitude within the framework of the applicable
statute to determine the appropriate individualized sentence.'  That sentence should reflect the judge's
careful assessment of several goals: 
punishment, deterrence, protection of the public, and rehabilitation.
. . .  In fashioning an
appropriate and individualized sentence that takes account of a defendant's
personal history, a judge has discretion to weigh many factors which would not
be relevant at trial, including the defendant's behavior, background, family
life, character, history, and employment" [citations and quotations
omitted]).

[27] Trial
counsel not only refused to submit an affidavit but also refused to provide his
case notes to motion counsel.  We have no
way of knowing whether the notes contain references to the plea discussion or
other relevant issues.